DAMIN AVIATION CORPORATION, Franklin Weichselbaum, Alan Turtletaub and Harold Wachtel, Plaintiffs,

v.

SIKORSKY AIRCRAFT, A DIVISION OF UNITED TECHNOLOGIES CORPORATION, United Technologies Corporation, Allison Gas Turbine, a division of General Motors Corporation and General Motors Corporation, Defendants.

No. 87 Civ. 5782 (MGC).

United States District Court,
S.D. New York.

Jan. 31, 1989.

Morris J. Eisen, P.C. by Arthur M. Luxenberg, Richard A. Leotta, New York City, for plaintiffs.

Shanley & Fisher, P.C. by John D. Clemen, Charles D. Donohue, New York City, for defendants Sikorsky Aircraft, a div. of United Technologies Corp., and United Technologies Corp.

Katten Muchin & Zavis by Edward Griffith, Mark A. Dombroff, New York City, for defendants Allison Gas Turbine, a div. of General Motors Corp., and General Motors Corp.

## OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Damin Aviation Corporation ("Damin")[1] brings this diversity action for alleged loss of profits caused by the crash of a helicopter leased to and operated by Damin. The helicopter's airframe was manufactured by defendant Sikorsky Aircraft, a division of defendant United Technologies Corporation (collectively, "Sikorsky"), and its engine was supplied by defendant Allison Gas Turbine, a division of defendant General Motors Corporation (collectively, "Allison"). This action was originally commenced in the Supreme Court of New York County on July 22, 1987, and removed to this Court on August 11, 1987. After the completion of discovery, defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. They argue that Damin cannot recover in tort for consequential economic loss as a matter of law, and that Damin cannot recover in contract for such losses because of various warranty limitations. For the reasons discussed below, defendants' motion is granted.

## THE UNDISPUTED FACTS

Damin is a New Jersey corporation with its principal place of business in New Jersey. Franklin Weichselbaum is the president and sole owner of Damin. Damin is engaged in the business of helicopter charter, service, and transport. It is the largest provider of executive-class helicopter transportation on the East Coast with a range of New York to Boston to Washington, D.C. As of December 31, 1987, Damin operated a fleet of twenty-one helicopters, consisting of Sikorsky S–76s, Bell 222s, and Aerospatiale AStars.

Sikorsky is a Delaware corporation with its principal place of business in Connecticut. Sikorsky manufactures helicopters in Connecticut, and has a completion and delivery facility in Florida. Allison is a Delaware corporation with its principal place of business in Michigan. Allison manufactures helicopter engines at facilities in Indiana.

On August 11, 1984, an S–76A helicopter leased to and operated by Damin with an airframe manufactured by Sikorsky and an engine manufactured by Allison ("the Helicopter") crashed at Fort Dix, New Jersey. The crash resulted in the death of the copilot, serious injury to the pilot, and loss of the Helicopter. While the Helicopter's engines were to contain themselves in the event of explosive engine failure, investigations determined that explosive engine failure caused shrapnel to take out the other engine as well as the tail rotor, drive shaft and the back-up electronic system, leaving the Helicopter powerless and without controls. Soon after the crash, Damin's insurer paid Damin $3,495,000 for the loss of the Helicopter. In November of 1984, the insurer for Sikorsky and Allison reimbursed Damin's insurer for the entire amount which entirely covered the purchase of another S–76A helicopter equipped with the same model Allison engines as the Helicopter at issue.

At the time of the crash, the Helicopter was owned by Capital Equipment Associates III, Ltd. ("Capital"), a New Jersey limited partnership in which Weichselbaum is a limited partner. Capital's general partner is Robert Kirschner, Weichselbaum's brother-in-law and an employee of Damin. Capital's sole purpose is to acquire equipment for lease to Damin.

The Helicopter was originally sold by Sikorsky to Executive Helicopter Sales, Inc. ("Executive"), a company owned by Bernard Lipsitz. Lipsitz is a former execu-

---

1. By stipulation dated January 19, 1988, plaintiffs Franklin Weichselbaum, Alan Turtletaub and Harold Wachtel discontinued their action with prejudice.

tive vice president of Damin, and is now president of Damin Jet, a company also owned by Weichselbaum. Executive buys aircrafts and sells them to partnerships at seven percent over their cost. Executive bought the Helicopter pursuant to a sales agreement made April 27, 1984, as amended by Amendments No. 1 and No. 2 made June 4, 1984, and July 16, 1984, respectively (the "Helicopter Sales Agreement"). The purchase price was $3,109,750, $2,459,-950 of which was paid by Capital. Thereafter, Executive sold the Helicopter to Capital pursuant to an Amended Purchase Agreement dated February 1, 1984. Capital then leased the Helicopter to Damin pursuant to an Aircraft Lease Agreement dated July 13, 1984. Sikorsky delivered the Helicopter on July 13, 1984, at its facility in Florida.

The Helicopter Sales Agreement contains the following provisions in its attached terms and conditions:

1. WARRANTIES, REMEDIES AND LIMITATIONS

(a) *Helicopter(s)*—Seller warrants to Buyer that the helicopter(s) sold hereunder will be free from defects in material and manufacture under normal use and service, provided that Seller's liability and Buyer's remedy under this warranty are limited to the repair or replacement, at Seller's election, of helicopter parts which are shown to Seller's reasonable satisfaction to have been thus defective and returned to Seller within 1,000 operational hours after the first use or operation of the helicopter upon which such helicopter part(s) was originally installed, but in no event later than two (2) years after the date of delivery of the helicopter by Seller....

(d) Notwithstanding the warranty in Paragraph (a) above, and in lieu of such warranty, the "Allison Model 250–C30 Series New Original Equipment Engine Warranty and Disclaimer", a copy of which Warranty has been furnished to Buyer and which is incorporated herein by reference, is the warranty applicable to turbine engines installed in the helicopter(s) and turbine engine parts sold hereunder.

(e) *Exclusive Warranties and Remedies*—THE FOREGOING WARRANTIES ARE EXCLUSIVE AND ARE GIVEN AND ACCEPTED IN LIEU OF (i) ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE; AND (ii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY IN CONTRACT OR TORT, WHETHER OR NOT ARISING FROM SELLER'S NEGLIGENCE, ACTUAL OR IMPUTED. THE REMEDIES OF THE BUYER SHALL BE LIMITED TO THOSE PROVIDED HEREIN TO THE EXCLUSION OF ANY OTHER REMEDIES INCLUDING, WITHOUT LIMITATION, INCIDENTAL OR CONSEQUENTIAL DAMAGES. NO AGREEMENT VARYING OR EXTENDING THE FOREGOING WARRANTIES, REMEDIES, OR THIS LIMITATION WILL BE BINDING UPON SELLER UNLESS IN WRITING, SIGNED BY A DULY AUTHORIZED OFFICER OF SELLER.

2. ASSIGNMENT/CONSTRUCTION/MERGER

(b) This Agreement shall be interpreted in accordance with the plain English meaning of its terms, and the construction thereof shall be governed by the laws of the State of Connecticut, United States of America.

9. LIABILITY LIMITATION

With respect to any helicopter or service purchased under this Agreement and alleged to be the cause of any loss or damage to the Buyer, the sum equal to the invoiced selling price of such helicopter or service shall be the ceiling limit on Seller's liability, whether founded in contract or tort (including negligence), arising out of or resulting from (i) this Agreement or the performance or breach thereof, (ii) the design, manufacture, delivery, sale, repair, replacement, or use of any such helicopter, or (iii) the furnishing of any such service. In no event

shall Seller have any liability for any incidental or consequential damages.

Allison's "Allison Model 250–C30 Series New Original Equipment Engine Warranty and Disclaimer," incorporated into the Helicopter Sales Agreement by paragraph 1(d), provides in pertinent part:

5. THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND OF ANY NON–CONTRACTUAL LIABILITIES BASED UPON NEGLIGENCE OR STRICT LIABILITY. ANY ADDITIONAL OR DIFFERENT LIABILITIES ASSUMED BY [ALLISON] MUST BE CONTAINED IN A WRITING SIGNED BY AN AUTHORIZED EMPLOYE OF [ALLISON].

6. The obligations of [Allison] under this warranty are limited to repair or replacement (at [Allison] option) of engines or engine parts as provided herein and do not include any remedy or liability for incidental or consequential damages of any kind, whether for damage to airframe or other property, for costs or expenses of operation of engines, for commercial losses or lost profits due to loss of use or grounding of engines or otherwise.

In no event, whether as a result of breach of contract or warranty, alleged negligence or otherwise, shall [Allison] be liable for special or consequential damages including but not limited to, loss of profits or revenue, loss of use of the engine or engine parts or other equipment, cost of capital, cost of substitute equipment, facilities or services, downtime costs, or claims of customers of buyer(s) for such damages.

## THE MOTION

In its complaint, Damin seeks $50 million in compensatory damages and $100 million in punitive damages for alleged loss of profits arising out of the Helicopter crash. In February of 1988, Damin furnished defendants with an itemization of its dam-

ages in which it narrowed its claim to slightly in excess of $28 million, consisting primarily of the alleged loss of a potential customer as a consequence of the crash. Damin argues that it is entitled to recovery of these damages based on four alternative theories of liability—negligence, breach of express warranty, breach of implied warranty and strict liability in tort.

Defendants counter that since the law does not recognize a remedy in tort for purely economic loss, Damin's first cause of action for negligence and its fourth cause of action for strict liability fail to state a claim upon which relief can be granted. In addition, defendants argue that based on the warranties in the Helicopter Sales Agreement, Damin's second cause of action for breach of express warranty and its third cause of action for breach of implied warranty also fail to state a claim upon which relief can be granted. Finally, defendants argue that Damin's claim for punitive damages must be dismissed because there is no valid underlying cause of action.

## DISCUSSION

### I. *Choice of Law*

There is a threshold issue as to which state's law should govern the substantive issues in this case. Because this is a diversity case, I must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984). New York courts apply a "substantial interest" test to tort choice of law issues. Under that test, "controlling effect" is given "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issues raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963). In *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 197, 480 N.E.2d 679, 684, 491 N.Y.S.2d 90, 95 (1985), the New York Court of Appeals emphasized that "[u]nder this

formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Accord Boxer v. Gottlieb,* 652 F.Supp. 1056, 1062 (S.D.N. Y.1987).

■ In this case, the locus of the alleged tort is New Jersey. As to the parties' domiciles, Damin is a New Jersey corporation with its principal place of business in New Jersey. Sikorsky manufactures helicopters in Connecticut, completes and delivers them in Florida, and is a division of a Delaware corporation with its principal place of business in Connecticut. Allison manufactures its helicopter engines in Indiana and is an unincorporated division of a Delaware corporation with its principal place of business in Michigan. Since both the locus of the tort and plaintiff's domicile is New Jersey, New Jersey has the most substantial interest in the issue of whether the plaintiff should have a remedy in tort. Therefore, a New York court would apply New Jersey law to the tort claim issues raised by this motion.

■ New York courts apply a similar "paramount interest" test to choice of law issues in contract disputes. *See Hutner v. Greene,* 734 F.2d 896, 899 (2d Cir.1984). Under the contract choice of law test, "the law of the jurisdiction having the greatest interest in the litigation will be applied and ... the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 248 N.E.2d 576, 582, 300 N.Y.S.2d 817, 825 (1969). This analysis has to be modified in the present case because the Helicopter Sales Agreement between Sikorsky and Executive, which all the parties treat as the contract among them,[2] expressly provides that Connecticut law shall govern its construction. Although Al-

lison was not a party to the contract, its warranties are incorporated into the Helicopter Sales Agreement in paragraph 1(d). In *Woodling v. Garrett Corp.,* 813 F.2d 543 (2d Cir.1987), the Second Circuit held:

> When such a [choice of law] provision exists and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.

*Id.* at 551; *accord Zerman v. Ball,* 735 F.2d 15, 20 (2d Cir.1984).

Since Connecticut is the principal place of business of Sikorsky, Connecticut has sufficient contact with the transaction to warrant honoring the parties' contractual choice of Connecticut law. The contract issues in this case are governed by the Uniform Commercial Code ("U.C.C.") which has been adopted by New York as well as Connecticut. Thus, the application of Connecticut law would not violate fundamental policies of New York law.[3] New York follows the doctrine of depecage and applies the law of different states to different issues in the same case. *See, e.g., Hutner,* 734 F.2d at 901; *Babcock,* 12 N.Y.2d at 473, 191 N.E.2d at 279, 240 N.Y.S.2d at 743 (law of state which has the strongest interest in the application of its law to a particular issue is chosen to apply to that issue). Thus, a New York court would apply New Jersey law to the tort issues in this case and Connecticut law to the contract issues.

## II. *Summary Judgment Standard*

Fed.R.Civ.P. 56 provides that a court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judg-

---

**2.** Because the lease to Damin was part of a series of sale and lease agreements for the financing of the Helicopter purchase, the parties do not attach any significance to the fact that Damin was not a party to the Helicopter Sales Agreement. Both sides agree that privity between Damin and the defendants is not required, and that Damin, despite its position as

an "as-is" lessee from Capital, is entitled to sue on the Helicopter Sales Agreement.

**3.** In any event, since New Jersey, like Connecticut, has adopted the U.C.C., if the law of New Jersey were applied to the contract issues, the result would be the same.

ment as a matter of law." *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). The essential question on a motion for summary judgment is whether there is a genuine dispute about a material fact. The test for granting a summary judgment motion is similar to the standard for a directed verdict. If the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party, then there is a genuine factual dispute and summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding a motion for summary judgment, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady*, 863 F.2d at 210. However, if after discovery a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to one of the claims, and on which that party will bear the burden of proof at trial, summary judgment may be granted on that claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no "genuine issue as to any material fact" because a failure of proof on an essential element of a claim of a nonmoving party "necessarily renders all other facts immaterial" as to that claim. *Id.* at 323, 106 S.Ct. at 2553.

Here, plaintiff has failed to raise a genuine issue as to any fact material to its claim. Therefore, summary judgment is appropriate.

### III.  *Tort Claims*

■ In its first and fourth causes of action, Damin seeks to recover damages in negligence and strict liability for alleged loss of profits caused by the loss of the Helicopter. Under governing New Jersey law, a plaintiff is barred from recovering in negligence and strict liability for purely economic loss, and is instead limited to its remedies under the U.C.C.

This principle was established by the New Jersey Supreme Court in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). In *Spring Motors*, the court stated:

We hold that a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distribution chain for breach of warranty under the U.C.C., but not in strict liability or negligence.

*Id.* at 663. The basis for the court's holding was the difference in the policies that underlie the U.C.C. and tort law. In discussing the *Spring Motors* decision, the Third Circuit in *Henry Heide, Inc. v. WRH Products Co.*, 766 F.2d 105, 109 (3d Cir.1985), explained:

Under tort law, there is a forced allocation of the risk of loss. For noncommercial entities such as consumers, there is often no private allocation of the risk of loss, and if there were, it would be unfair to place the risk of loss on the consumer rather than the manufacturer given the unequal resources and bargaining positions of the parties. Thus, in those circumstances, public policy will allocate the risk of loss to the better riskbearer through the doctrines of strict liability and negligence. When commercial parties of equal bargaining power allocate the risk of loss by contract, however, there is a strong public policy to give effect to the private allocation. Under the U.C.C., commercial parties can allocate the risk of loss from defects through warranties, disclaimers and limitations on warranties.

The facts of this case fall within the holding of *Spring Motors*. Damin is seeking damages only for economic loss caused by the defective Helicopter. In addition, Damin, Sikorsky and Allison are all commercial entities with comparable bargaining power. In its sales brochure, Damin advertises that it is "the largest provider of executive class helicopter transportation on the East Coast." While the operations of the defendants are clearly more extensive,

"perfect parity is not necessary to a determination that parties have substantially equal bargaining positions." *Spring Motors*, 489 A.2d at 671.

Damin attempts to distinguish this action from *Spring Motors* by pointing to the fact that the damage to the Helicopter occurred in an accident and was accompanied by personal injuries. In contrast, *Spring Motors* involved a truck dealer who sought recovery of economic loss that resulted from frequent transmission failures in the trucks it had purchased. No accident had occurred, and there was no claim for personal injuries or property damage other than for the damage to the trucks themselves. Damin argues that *Spring Motors* prohibits recovery in tort for economic loss only when the sole damage involved is to the product that was the subject of the contract.

Damin reads the holding in *Spring Motors* too narrowly. In *Spring Motors*, the court refused to resolve the conflict between tort law and the U.C.C. by focusing on the manner in which the economic loss occurred. *Id.* at 673. Thus, the fact that the Helicopter was damaged in an accident is not a significant difference.

Moreover, the *Spring Motors* court expressly distinguished the facts of that case from cases in which a party seeks to recover for economic loss which results from personal injuries or damage to property that was not the subject of the contract. *Id.* at 672. Although the Helicopter crash caused personal injuries, Damin is suing only for economic loss arising from the defective Helicopter, and not from economic loss arising from the personal injuries. Thus, Damin is in the same position as the plaintiff in *Spring Motors* who sought to recover for the economic loss it suffered as a result of the damage to the trucks. In such a case, *Spring Motors* noted:

> [T]he U.C.C. "is generally regarded as the *exclusive source* for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself."

*Id.* at 673 (quoting W. Prosser & W. Page Keeton, *Handbook of the Law of Torts* § 95A at 680 (5th ed. 1984)) (emphasis in original). *See also S.J. Groves and Sons Co. v. Aerospatiale Helicopter Corp.*, 374 N.W.2d 431 (Minn.1985) (court held that commercial plaintiff could not recover in tort for economic losses resulting from damage that defective helicopter caused to itself; rather, recovery for economic losses was limited to those losses attributable to personal injury or damage to other property). Accordingly, defendants' motion for summary judgment on plaintiff's tort claims must be granted under the authority of *Spring Motors*.

## IV. *Contract Claims*

In its second and third causes of action, Damin seeks to recover damages for alleged loss of profits as a result of the Helicopter crash under theories of breach of express and implied warranties respectively. Defendants argue that such relief cannot be granted because the warranty provisions of the Helicopter Sales Agreement expressly exclude liability for consequential damages. In addition, defendants argue that Damin cannot recover for consequential damages under the implied warranty theory because the warranty provisions expressly disclaim all implied warranties.

Under the U.C.C. as adopted by Connecticut, parties to a sales contract may limit the remedies available. Section 42a–2–316(4) provides: "Remedies for breach of warranty can be limited in accordance with the provisions of section 42a–2–718 on liquidation or limitation of damages and section 42a–2–719 on contractual modification of remedy." Conn.Gen.Stat.Ann. § 42a–2–316(4) (West 1960). In § 42a–2–719, the U.C.C. expressly provides that under certain circumstances consequential damages may be excluded. Section 42a–2–719(3) reads: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to person in the case of consumer goods is

prima facie unconscionable but limitation of damages where the loss is commercial is not." Conn.Gen.Stat.Ann. § 42a–2–719(3) (West 1960). Thus, the relevant inquiry is whether the defendants' warranty provisions in the Helicopter Sales Agreement in which they exclude consequential damages is unconscionable.

### A. *Unconscionability*

■ Whether the exclusion of consequential damages in a particular contract is unconscionable is a question of law to be decided by the court. Conn.Gen.Stat.Ann. § 42a–2–302 (West 1960); *Texaco, Inc. v. Golart,* 206 Conn. 454, 538 A.2d 1017, 1021 (1988). Courts have rarely found limitations of consequential damages in commercial transactions to be unconscionable. *See Cayuga Harvester, Inc. v. Allis–Chalmers Corp.,* 95 A.D.2d 5, 20, 465 N.Y.S.2d 606, 617 (4th Dep't 1983). The Official Comments to § 42a–2–302 provide that the basic test for determining unconscionability is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Conn.Gen.Stat.Ann. § 42a–2–302, Comment 1 (West 1960). In applying this test, courts have considered a variety of factors, such as: the good faith of the parties; the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *See, e.g., Kaplan v. RCA Corp.,* 783 F.2d 463, 467 (4th Cir.1986); *Golart,* 538 A.2d at 1021.

What is the evidence of unconscionability in this case? The transaction was unquestionably commercial, as are the losses sought by Damin. While Damin is a small company compared to the defendants, it is a substantial commercial entity. No claim is made that Damin's president, Mr. Weichselbaum, was inexperienced in transactions like the one in question. As the largest provider of executive class helicopter transportation on the East Coast, Damin is experienced in commercial dealings in the aviation business. Indeed, the complicated nature of the transactions involved in Damin's leasing of the Helicopter testifies to Damin's sophistication. Nor can Damin contend that the clauses excluding liability for consequential damages were "lost in a linguistic maze" or were a surprise. The type in Sikorsky's clause was bold-faced and capitalized, and Allison's entire warranty is only one page long.

The only claim that Damin makes that is relevant to the determination of whether the provisions excluding consequential damages are unconscionable concerns the good faith of the defendants. Damin alleges that the defendants had prior knowledge of defects in the S–76A helicopter engine. While a party "may be estopped from asserting a contractual limitation of consequential damages if [it] acted in bad faith," *Long Island Lighting Co. v. Transamerica Delaval,* 646 F.Supp. 1442, 1458 (S.D.N.Y.1986), Damin has not presented evidence that raises a genuine issue as to this claim.

As evidence of the defendants' prior knowledge, Damin points to the following sources: (1) Damin's own "Pilot/Aircraft Accident Report" submitted to the National Transportation Safety Board on August 15, 1984 in which Damin's operator stated without substantiation that "[b]oth manufacturers knew of deficiencies but did not take adequate safety precautions"; (2) the affidavit of Damin's President, Franklin Weichselbaum, in which he stated that Sikorsky was aware of the problem because a similar accident had occurred four months before this crash, and that soon after this crash corrective steps were taken; (3) a letter from Sikorsky to Executive Helicopter Sales, Inc., dated September 25, 1984 (one month after the accident), regarding modifications made to the S–76A helicopter engines; (4) an Airworthiness Directive issued by the Federal Aviation Administration after the accident requiring certain modifications to be made in the engines of the S–76A helicopters; and (5) three articles after the accident that dis-

cuss the Federal Aviation Administration's investigation of the safety of the S-76A helicopter engines.

These sources are insufficient to raise a genuine issue as to whether the defendants had prior knowledge of the alleged defects in the Helicopter's engine. While a court should act cautiously in granting summary judgment where state of mind is in issue, mere conjecture or speculation by a party resisting the motion does not provide a basis for denial. *See Quarles v. General Motors Corp. (Motors Holding Division)*, 758 F.2d 839, 840 (2d Cir.1985). The first two sources are simply conclusory allegations by Damin unsupported by facts. Similarly, the fact that the defendants sought to modify the engine in accordance with Federal Aviation Administration directives following the accident does not support Damin's claim of prior knowledge. It is not reasonable to infer from this conduct that the defendants had previously been selling a product that they knew to be defective. There has been full opportunity for discovery in this case. Damin has not uncovered any evidence of prior knowledge by defendants of the engine defect that caused the Helicopter to fail in this case. Plaintiff's unsupported suspicion of bad faith does not create a genuine factual dispute and cannot estop defendants from invoking the contractual exclusion of consequential damages.

B. *Effect of § 42a-2-719(2)*

■  Damin also argues that the contract provisions excluding consequential damages cannot stand even if they are not unconscionable because the limited repair or replacement warranties found in ¶ 1(a) of the Helicopter Sales Agreement and in Allison's warranty provision as incorporated by the Helicopter Sales Agreement failed of their essential purpose. Damin's argument is grounded on § 42a-2-719(2) which provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." Conn.Gen. Stat.Ann. § 42a-2-719(2) (West 1960). This provision allows a buyer to pursue his remedies under other provisions of the U.C.

C. as if a limited warranty clause did not exist upon a finding that the limited warranty failed of its essential purpose. *See Cayuga Harvester, Inc.*, 95 A.D.2d at 12, 465 N.Y.S.2d at 612. Damin argues that the limited warranties in the Helicopter Sales Agreement failed of their essential purpose, and since one of Damin's remedies under the U.C.C. is the recovery of consequential damages under § 42a-2-714(3), the contractual provisions excluding consequential damages are rendered inoperative.

There do not appear to be any Connecticut court decisions on the issue of whether the failure of the essential purpose of a limited remedy is material to the question of whether a provision excluding consequential damages is unconscionable. Even if I were to assume that the failure of a limited remedy of its essential purpose is material to whether a consequential damages exclusion is unconscionable, summary judgment on this claim would still be appropriate. Damin has failed to raise a genuine factual issue about whether the repair or replacement warranties in the Helicopter Sales Agreement failed of their essential purpose.

In support of its contention, Damin offers no facts, but instead relies on *Comind, Companhia de Seguros v. Sikorsky Aircraft*, 116 F.R.D. 397 (D.Conn.1987), in which it was held that a time limitation on remedying a latent defect may have caused the repair or replacement remedy to fail of its essential purpose. Here, there was no barrier to recovery of the full price of the Helicopter. It is undisputed that soon after the crash Damin's insurer paid Damin $3,495,000 for the loss of the Helicopter, and that in November of 1984 the defendants' insurer reimbursed Damin's insurer for that entire amount. Damin used the insurance payments to purchase another S-76A helicopter in December of 1984. Since the defendants were able to replace the Helicopter within a reasonable time, Damin has not lost a substantial benefit of its bargain. A limited remedy fails of its essential purpose only where, because of circumstances that develop after the formation of the contract, the limited remedy

operates to deprive a party of a substantial benefit of the bargain, *see* Conn.Gen.Stat. Ann. § 42a–2–719, Comment 1 (West 1960). Plaintiff has not proffered any factual basis for a conclusion that the limited warranties in this case failed of their essential purposes. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's claims for consequential economic losses based on the Helicopter Sales Agreement.

Plaintiff also asserts a claim for punitive damages. Under New Jersey, Connecticut and New York law, a claim for punitive damages is not an independent cause of action. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224, 1228 (1984); *Jones v. O'Connell,* 189 Conn. 648, 458 A.2d 355, 361 (1983); *Frybergh v. Weissman,* —— A.D.2d ——, 536 N.Y.S.2d 465, 466 (2d Dep't 1988). Since defendants are entitled to summary judgment on all of plaintiff's substantive claims, plaintiff's claim for punitive damages loses its underpinnings and collapses.

### CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed.

SO ORDERED.