■ 27TH STREET ASSOCIATES, LLC, Appellant, v RICHARD LEHRER, Defendant, and GEORGE KALLAN, Respondent. [772 NYS2d 28]—

Order, Supreme Court, New York County (Marcy Friedman, J.), entered October 25, 2002, which denied plaintiff's motion for summary judgment and granted defendant Kallan's cross motion for summary judgment dismissing the complaint against him, unanimously affirmed, without costs.

Plaintiff seeks to recover under a personal guaranty signed by defendant George Kallan in connection with a commercial lease. In 1987, Art Station Ltd., a corporation of which defendant was

the president, entered into a lease agreement with plaintiff's predecessor-in-interest, 144 Holding Company, for a retail store at 144 West 27th Street in Manhattan. At the time of the execution of the lease, and "as consideration for the letting referred to herein and an inducement to Landlord to enter into such letting with Tenant," defendant executed a personal guaranty of the corporation's performance under the lease, which included "[f]ull payment of the Minimum Rent and Additional Rents up to and including the date Tenant vacates the Demised Premises and delivers same in broom swept condition." The guaranty stated, "It is specifically understood that this Guaranty shall continue in full force and effect and shall not be affected by any assignment, subletting, renewal, modification and/or extension of the Lease, without the necessity for any notice to the Guarantor of any such assignment, subletting, renewal, modification or extension." Defendant Richard Lehrer, another principal of the corporation, also executed a personal guaranty in connection with the lease.

In 1995, plaintiff and Art Station Ltd., in a written agreement signed by defendant Kallan for the latter, modified and extended the lease to January 31, 2001. In 1996, defendant Kallan retired as president of Art Station Ltd. when he sold his entire interest in the business to Lehrer. In November 2000, Lehrer signed a second lease modification and extension agreement extending the lease to January 31, 2006, and a second personal guaranty of the corporation's performance under the lease.

In a written "Notice to Guarantors" dated September 21, 2001, plaintiff notified defendant Kallan that Art Station Ltd. was in default in payment of rents due under the lease and demanded payment of the amounts due and owing. Plaintiff then commenced this action against defendants Kallan and Lehrer to recover, inter alia, rent arrears in the amount of $118,914.48 with interest from June 1, 2001. Shortly thereafter, plaintiff moved for summary judgment on the ground that defendant Kallan was obligated for the rents due by the express terms of his personal guaranty, which was never canceled or terminated. Defendant Kallan cross-moved for summary judgment, claiming that his guaranty was no longer in force or effect.

The motion court denied plaintiff's motion and granted defendant's cross motion, dismissing the complaint against him. Citing *Fehr Bros. v Scheinman* (121 AD2d 13 [1986]), the court found as a matter of law that defendant was discharged from liability under his guaranty by virtue of the complete change in

the form and management of the business effected by his sale of his entire interest therein and relinquishment of any involvement in its operation, and the substantial change in the nature of the guaranty effected by the increased risk to which he was exposed under the second lease extension, which tripled the rent and increased Art Station's liability for real estate taxes from 36% to 100%. We affirm the dismissal of the complaint on different grounds. We conclude that defendant is not liable to plaintiff for Art Station's performance under the second lease modification and extension agreement because he terminated his guaranty, as of the end of the term of the lease then in effect, in connection with his retirement and the sale of his interest in the corporation.

A continuing guaranty may be terminated by the guarantor by notice to the obligee (plaintiff in this case) revoking his liability for obligations that may be incurred subsequent to the notice (*Emery v Baltz*, 94 NY 408, 414 [1884]; *Picker v Fitzelle*, 60 App Div 451, 452-453 [1901]; 23 Lord, Williston on Contracts § 61:45, at 164 [4th ed]; Restatement [Third] of Suretyship & Guaranty § 16). Defendant's guaranty does not dictate the form of such notice; indeed it contains no provision at all for termination. While plaintiff alleges that the guaranty was never canceled or terminated, the uncontroverted evidence in the record establishes that plaintiff was advised that defendant would not be bound by the guaranty after his departure from Art Station Ltd.

In his affidavit, defendant avers that at the time of the second modification of the lease, he spoke to Harve Schuster, the vice-president of plaintiff's predecessor, about ending his involvement with the corporation. He points out that, whereas he negotiated the original lease and the first modification with Schuster and he signed both documents for Art Station, it was defendant Lehrer who represented the corporation in the negotiations and the execution of the second modification. Moreover, at the time of the second lease modification plaintiff obtained a personal guaranty from Lehrer. This guaranty comprises paragraph ninth of the lease modification agreement, which Lehrer signed twice: once on behalf of the corporation and again, in a separate signature block, consenting and agreeing to the provisions of paragraph ninth. These facts are not disputed by plaintiff.

Defendant argues that plaintiff insisted on Lehrer's executing a guaranty on the second modification because it knew that defendant was no longer involved in the business of Art Station Ltd. and understood that the guaranty that defendant executed

when he was the president of the corporation—indeed executed as consideration for plaintiff's entering into the lease with the corporation—had terminated with the end of his involvement.

In *Fehr Bros.* (121 AD2d at 20), this Court found that a change in the corporate debtor's name, an expansion of corporate capital through the sale of additional shares and a change in corporate status from a close corporation solely owned by the guarantor to a publicly owned corporation of which he still retained majority control—changes that the guarantor had put into motion and authorized—did not result in the creation of a different entity and did not significantly alter the business dealings between the corporation and its creditor or alter the risk assumed by the guarantor. We concluded however, that, even if the risk to the guarantor had increased, the guarantor, in making a voluntary business decision that resulted in such increase and in failing to carry out the simple task of relieving himself of his obligations by providing, as the guaranty required, written notice to plaintiff of his intent to terminate the guaranty, implicitly consented to that increased risk (*id.* at 22-23).

In the instant case, defendant decided to sever his relationship with the corporation whose performance under the lease he had guaranteed. Unlike the guarantor in *Fehr Bros.*, defendant was not required by the terms of his guaranty to provide written notice to plaintiff of the termination of the guaranty. He informed plaintiff orally of his decision to sever his connection with Art Station Ltd. and, from plaintiff's subsequent dealings with Lehrer, it can be inferred that plaintiff understood that defendant's guaranty would not cover leases executed after defendant's involvement in the corporation had ended. Defendant thus established that he terminated his guaranty and was not obligated for the performance of Art Station Ltd. under any leases executed after the end of the term of the first lease modification and extension agreement. Concur—Mazzarelli, J.P., Andrias, Ellerin, Friedman and Gonzalez, JJ.