JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendants-appellants Michael Joseph Mercure, III, Michael James Mercure, and Carol Mercure ("the Mercures") appeal from the final judgment of the Cuyahoga County Court of Common Pleas that awarded plaintiff-appellee General Motors Acceptance Corporation ("GMAC") $1,743,176.18, as well as the court's decision to grant GMAC's motion for partial summary judgment on liability. For the reasons stated below, we affirm.
 {¶ 2} GMAC filed a complaint for money against the Mercures on September 3, 2004. GMAC alleged that the Mercures had failed to honor their obligations under the guaranty agreements they had executed in favor of GMAC.
 {¶ 3} The Mercures were officers and/or shareholders in an automobile dealership located in New Waterford, Ohio, known as Midway Motor Sales, Inc. ("Midway"). The Mercures executed the guaranty agreements in favor of GMAC to induce GMAC to extend or continue to extend credit to Midway. In exchange, the Mercures unconditionally guaranteed "the payment of all indebtedness of [Midway] to GMAC, including any indebtedness assigned to GMAC arising in connection with the GM Installment Sales Finance Plan." Each guaranty agreement specifically provided that it was a "continuing guaranty."[1]
 {¶ 4} Beginning in the year 2000, several years after the guaranty *Page 4 
agreements were executed, Midway began tampering with the odometers of certain leased vehicles that were owned by GMAC. There is no evidence in the record that the Mercures were involved with the odometer tampering or that GMAC was aware of it.
 {¶ 5} The Ohio Attorney General filed an action against Midway and GMAC that was decided in 2006, Ohio v. Midway Motor Sales, Inc. (June 1, 2006), Franklin County C.P. No. 05 CVH 01-175. In that case, the Franklin County Court of Common Pleas explained the facts surrounding the odometer tampering as follows:
 "* * * Midway Motor Sales, Inc. ("Midway") bought vehicles from General Motors to sell at its dealership in Youngstown, Ohio. Midway then leased numerous vehicles to Modern Builders Supply, Inc. The leases as well as the vehicles were then assigned to GMAC, with the vehicles being titled in its name. After the leases expired, Midway obtained possession of the vehicles and altered and/or rolled back the odometers on 85 — 93 of the vehicles without GMAC's knowledge or consent. * * * GMAC owned the vehicles at the time of the `rollbacks' though the vehicles were never physically possessed by GMAC. These vehicles were then sold at auctions to automobile dealers.
 "At the time of their sale, GMAC completed odometer statements. However, they were inaccurate. These statements were completed before GMAC learned of Midway's alteration and/or rolling back of the odometers. The vehicles were ultimately sold to retail purchasers.
 "It bears emphasizing that Midway, not GMAC, was responsible for the tampering and that GMAC had no knowledge of Midway's actions. In fact, GMAC uncovered Midway's fraud and reported it to Plaintiff. GMAC formulated a remediation plan which Plaintiff encouraged. These remediation efforts included the payment of $1.2 million to the current owners of the affected vehicles. GMAC *Page 5 negotiated with each owner and either bought back the vehicles or paid a monetary adjustment for which GMAC received releases from the owners."
Ohio v. Midway Motor Sales, Inc., supra.
 {¶ 6} Despite the fact that Midway, and not GMAC, was responsible for the odometer tampering, GMAC was found strictly liable for violating Ohio's Odometer Rollback and Disclosure Act, specifically, R.C. 4549.46. The statute provides in relevant part:
 "(A) No transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised
 Code * * *
 "(D) Except as otherwise provided in this division, whoever violates division (A) or (B) of this section is guilty of an odometer disclosure violation, a felony of the fourth degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section or any provision of sections 4549.42 to 4549.451 of the Revised Code, a violation of this section is a felony of the third degree."
R.C. 4549.46. Although GMAC was found civilly liable under this statute, there is no evidence that criminal charges have been brought.
 {¶ 7} In the instant matter, GMAC claimed, and presented undisputed *Page 6 
evidence that showed, that the odometer tampering by Midway constituted a breach of Midway's safe storage obligations under the GMAC Lease Plan Dealer Agreement. GMAC also argued that Midway defaulted on its contractual obligations to GMAC, thereby incurring an indebtedness to GMAC, which the Mercures unconditionally guaranteed.[2]
 {¶ 8} GMAC brought this action against the Mercures seeking to recover the following indebtedness of Midway: (1) obligations due under a Wholesale Floor Plan Financing Agreement, (2) damages incurred by GMAC relating to odometer tampering by Midway, and (3) attorney's fees and costs incurred by GMAC arising from the above matters.
 {¶ 9} GMAC filed a motion for partial summary judgment on the issue of liability that the trial court granted. The matter proceeded to trial on the issue of damages. Ultimately, the trial court awarded GMAC damages in the amount of $1,743,176.18, specifically finding that $1,05[0],397.50[3] was awarded for the results of odometer tampering by Midway. The remaining amount included $137,237.62 for the amounts due under the Wholesale Floor Plan Financing Agreement (conceded by the Mercures), and $555,541.06 in attorney's fees and costs incurred by GMAC. *Page 7 
 {¶ 10} The Mercures have appealed and have raised five assignments of error for our review. Their first assignment of error provides the following:
 {¶ 11} "I. The trial court erred by granting plaintiff's/appellee's motion for partial summary judgment on the issue of liability because odometer tampering by Midway Motors is not covered by the personal guaranties at issue."
 {¶ 12} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga Cty. Community College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. " State ex rel. Dussell v. Lakewood Police Dept,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State ex rel. Duganitzv. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 {¶ 13} As an initial matter, we recognize that the guaranty agreements provide that they are to be construed and determined "according to the law of the State of New York." The parties do not dispute that New York law is to be applied in this matter pursuant to the choice of law provision. *Page 8 
 {¶ 14} Under their first assignment of error, the Mercures challenge the trial court's construction of the personal guaranty agreements. They essentially claim that their liability was limited to Midway's existing contractual debts as well as future debts "arising in connection with the GM Installment Sales Finance Plan." They claim that there was no intent to apply the guaranty agreements to future criminal conduct, referencing the odometer tampering by Midway that occurred after the guaranty agreements were executed.
 {¶ 15} Under New York law, "while a guarantor's liability is strictly construed, fundamental principles of contract law are applicable and the guarantee contract should thus be interpreted to reflect the intentions of the parties." Chase Lincoln First Bank, N.A. v. Smith (N.Y. A.D. 1988), 144 A.D.2d 816, 817. Moreover, while the language of a guaranty agreement must be given its ordinary meaning, it is equally accepted that the liability of a guarantor cannot be extended in the application of the guarantee beyond the clear agreement of the parties.Crisafulli Bros., Inc. v. Clanton (N.Y. A.D. 1987), 128 A.D.2d 963, 964.
 {¶ 16} The interpretation of contract provisions is a question of law for the court. 2619 Realty, LLC v. Fid. Guar Ins. Co. (N.Y. A.D. 2003), 303 A.D.2d 299. A court is not free to "make or vary the contract * * * to accomplish its notions of abstract justice or moral obligation." See id.
 {¶ 17} The two guaranty agreements at issue here identically state, in relevant part, as follows: *Page 9 
 "To induce General Motors Acceptance Corporation, hereinafter called GMAC, to extend or continue credit to Midway Motor Sales, Inc. hereinafter called Dealer, the undersigned person or persons does hereby unconditionally guarantee the payment of all indebtedness of Dealer to GMAC, including any indebtedness assigned to GMAC arising in connection with the GM Installment Sales Finance Plan, together with all costs, expenses and attorney's fees incurred by GMAC in connection with any default of Dealer.
 "* * *
 "This is a continuing guaranty and shall remain in full force and effect until forty-eight (48) hours after receipt by GMAC * * * of written notice by the undersigned terminating or modifying same; provided, however that such notice shall not operate to release the undersigned from liability hereunder with respect to any obligations incurred prior to the effective date of such notice."
(Emphasis added.)
 {¶ 18} Each guaranty agreement also provides: "Notwithstanding the generality of the above, if it is intended that this guaranty apply only to a specific loan(s) or advance(s) so indicate [in the space provided] below * * *." Neither agreement designated any loan or advance in the space provided.
 {¶ 19} The Mercures claim the term "including" is one of limitation and that the use of the term in the guaranty agreements served to limit the guaranties to only Midway's existing contractual debts, as well as those debts "arising in connection with the GM Installment Sales Finance Plan." This argument ignores the context in which the term is used in connection with other wording of the guaranty agreements. When interpreting a contract, full meaning and effect should be given to all of its *Page 10 
provisions. Ronbet 366, LLC v. Tobias (N.Y. A.D. 2003),309 A.D.2d 602, 603.
 {¶ 20} Here, the use of the term "including" is preceded by the unconditional guaranty of "all indebtedness of Dealer to GMAC." Pursuant to Black's Law Dictionary, "[including] may, according to context, express an enlargement and have the meaning of and or in addition to * **" Black's Law Dictionary, Abridged (6th Ed. 1991) (emphasis original). In the context of the guaranty agreements herein, we find the term "including" is a word of inclusion or addition to the phrase "all indebtedness of Dealer to GMAC."
 {¶ 21} This ordinary construction is further supported by the language in the guaranty agreements that explicitly states that they are "unconditional" and "continuing guaranties."
 {¶ 22} A continuing guaranty is generally defined as "a guaranty of future indebtedness uncertain as to amount or time. " Delro Industries,Inc. v. Evans (Ala. 1987), 514 So.2d 976, 979. Black's Law Dictionary states that a continuing guaranty (or contract of suretyship) usually relates "to a future liability of the principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied." Black's Law Dictionary (5th Ed. 1979). As further stated in the Restatement (Third) of Suretyship and Guaranty § 16, Continuing Guaranty:
 "A continuing guaranty is a contract pursuant to which a person *Page 11 agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee. A continuing guaranty is terminable, and may be terminated by the continuing guarantor by notice to the obligee."
 {¶ 23} Likewise, New York law recognizes that a continuing guaranty looks to the future:
 "A continuing guaranty is in the nature of a continuing offer to guarantee a series of debts * * *. Such a guaranty is one which does not undertake to regulate the number of the principal debtors' future transactions with the creditor. It looks to the future and anticipates new or additional transactions, including renewals of the then-existing indebtedness thereafter."
63 N.Y.Jur. Section 84, Guaranty and Suretyship (2006).
 {¶ 24} Consistent with interpreting a continuing guaranty to apply to future obligations, the court in Louis Dreyfus Energy Corp. v. MG Ref. Mktg. (N.Y. 2004), 812 N.E.2d 936, indicated that existing authorities "support the view that the guarantor should be held liable for [obligations that may arise in the future], unless the guaranty expressly shields it from liability. It will normally be true * * * that the purpose of a continuing guaranty is to enable parties who enter into contracts to be secure in the knowledge that whatever debts become due them under the contracts *Page 12 
will be protected by the guaranty."
 {¶ 25} Had the Mercures wished to limit their liability under the guaranty agreements, they could have specified loans or advances to which it applied, in the space provided. They chose not to do so. Further, they could have taken steps to terminate the guaranty by written notice as provided in the guaranty agreements. It is well settled that "a continuing guaranty may be terminated by the guarantor by notice to the obligee * * * revoking his liability for obligations that may be incurred subsequent to the notice." 27th Street Assoc, LLCv. Lehrer (N.Y. A.D. 2004), 4 A.D.3d 165, 167. The Mercures offer no evidence that they took any steps to terminate their continuing obligations under the guaranty agreements. By failing to carry out this simple task of providing written notice to GMAC of their intent to terminate the guaranty agreements, the Mercures implicitly consented to the increased risk to which they were exposed. A review of the trial transcript reflects that GMAC relied upon the guaranty agreements in continuing to extend credit and financing to Midway and in continuing to operate under the GMAC Lease Plan Dealer Agreement.
 {¶ 26} Insofar as the Mercures claim they agreed only to guarantee the performance of a lawfully operating auto dealership and the scope of the guaranty agreements should not be extended to future illegal conduct by Midway, we reiterate that we cannot make or vary the contract to accomplish notions of abstract justice. See 2619 Realty, LLC,303 A.D.2d 299. The nature of Midway's conduct is not *Page 13 
relevant to our determination. This matter relates to the contractual obligations of the Mercures under the guaranty agreements. The Mercures unconditionally guaranteed all of Midway's indebtedness to GMAC. The Mercures did not dispute in the lower court that Midway breached the GMAC Lease Plan Dealer Agreement by altering and/or rolling back the odometers of various vehicles at lease end, and thereby failing to provide "safe storage" as required by said agreement.[4] The GMAC Lease Plan Dealer Agreement specifically provides: "If Dealer [Midway] breaches this Agreement, Dealer shall pay GMAC all losses and expenses incurred by GMAC because of such breach. In addition, Dealer shall indemnify GMAC for any losses or expenses incurred by GMAC because of any judicial set-off or recovery suffered because of any claim or defense asserted against GMAC as a result of any act or omission on the part of Dealer, or because of any claim or defense of a Lessee against Dealer." Midway, and hence the Mercures as guarantors of "all indebtedness," were obligated to pay GMAC for any losses and expenses incurred as a result of such breach. This would include the damages for which GMAC was found civilly liable as a result of the odometer tampering.
 {¶ 27} The Mercures' first assignment of error is overruled.
 {¶ 28} The Mercures' second assignment of error provides as follows: *Page 14 
 {¶ 29} "II. Applicable New York law specifically provides that contracts for the indemnification of future losses incurred as a result of intentional/criminal misconduct are void and unenforceable and therefore summary judgment should not have been granted in favor of appellee on the issue of liability."
 {¶ 30} Under their second assignment of error, the Mercures claim that under New York law they could not have entered into enforceable agreements to indemnify GMAC for future criminal activity by "Midway." It is true that courts will not aid a person "who founds his cause of action upon his own immoral or illegal act." Bankers Trust Co. v. LittonSystems, Inc. (C.A.2, 1979), 599 F.2d 488, 492, citing Restatement of Contracts § 598, Comment (a) (1932). The problem with the Mercures' argument is that they premise their argument on "Midway's" misconduct as opposed to any misconduct by GMAC, which is the plaintiff to this action. Further, the Mercures' reliance on tort and indemnity cases is not relevant to our resolution of this matter, which is a contract claim involving guaranty agreements.
 {¶ 31} Nevertheless, we recognize that under New York law, "illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them."Balbuena v. IDR Realty LLC (N.Y. 2006), 845 N.E.2d 1246. The Mercures aver in their reply brief that GMAC was found subject to strict liability under R.C. 4549.46. Although this issue was not raised in the trial court, according to New York law, "a court of its own motion will deny the right to any relief under an illegal contract contrary to public policy, even without reference to the *Page 15 
state of the pleadings, whenever it becomes apparent that such agreement is antagonistic to the public interest and welfare."Blumenberg v. Neubecker (N.Y. 1963), 191 N.E.2d 269. For purposes of our review, our concern is with whether enforcement of the guaranty agreements would be against an overriding public policy.
 {¶ 32} The evidence before this court reflects that GMAC was found strictly liable for violating Ohio's Odometer Rollback and Disclosure Act, specifically, R.C. 4549.46.[5] In Ohio v. Midway Motor Sales,Inc., supra, despite the fact that the court recognized Midway, not GMAC, was responsible for the odometer tampering, GMAC, as the transferor of the vehicles with incorrect odometer disclosure statements, was subject to strict liability under R.C. 4549.46. As the court stated, "[s]trict liability is imposed on the actual owner who transfers the vehicle with an inaccurate disclosure regardless of knowledge and regardless of who perpetrated the wrongdoing * * *." In reaching this conclusion, the court followed Flint v. Ohio Bell Tel.Co. (1982), 2 Ohio App.3d 136, a case in which the court recognized that intent is not required under R.C. 4549.46. The Flint court reasoned: "In Ohio, intent is not required where the accused had the means of knowledge relating to the facts of the violation, or, where, because of substantial and significant public interest *Page 16 
involved, the accused had a duty to ascertain the facts of the violation. * * * [T]he public has a substantial interest in insuring accurate disclosure of odometer readings when motor vehicles are transferred. * * * Thus, we hold that Ohio Bell had a strict duty to ascertain the true mileage of the vehicle."
 {¶ 33} The above case law reflects that strict liability is imposed by R.C. 4549.46 by operation of law as a matter of public policy for the protection of consumers who purchase automobiles and is based in tort law. Here, we are not concerned with the protection of the consumer, but rather with the enforcement of a contract between parties of equal bargaining power. It is contractual principles that govern this matter.
 {¶ 34} As stated in Velez v. Craine Clark Lumber Corp. (N.Y. 1973),305 N.E.2d 750, 754: "[W]e see no reason why in the absence of some consideration of public policy parties cannot by contract restrict or modify (strict liability in tort)." When parties of equal bargaining power allocate the risk of loss by contract, there is a strong public policy to give effect to the private allocation. See Damin AviationCorp. v. Sikorsky Aircraft (S.D.N.Y. 1989), 705 F.Supp. 170, 175;Henry Heide, Inc. v. WRH Products Co. (C.A. 3, 1985), 766 F.2d 105, 109.
 {¶ 35} In this action, we find that public policy is not impeded by requiring the Mercures to honor their contractual obligations under the guaranty agreements. Accordingly, their second assignment of error is overruled.
 {¶ 36} The Mercures' third assignment of error provides as follows: *Page 17 
 {¶ 37} "III. The Mercures must be discharged from liability under their personal guaranties because they cannot be held responsible where there has been a substantial change in the nature of the business of Midway Motors or in the nature of the guaranties they signed."
 {¶ 38} New York law provides the following: "Although a guarantor may be discharged from liability under a guarantee when there has been a substantial change in the nature of the guarantee (see, State of NewYork v. International Fid. Ins. Co., 152 A.D.2d 77; Fehr Bros. v.Scheinman, 121 A.D.2d 13), to determine whether such discharge has occurred: `[t]he appropriate inquiry focuses on the extent to which the changes in [the] form of the entity whose debts are guaranteed significantly alter the business dealing between the principal obligor and the creditor and whether they have a potentially adverse impact on the nature of the surety's undertaking, particularly on the degree of risk the surety assumed' (State of New York v. International Fid. Ins.Co., supra, at 80-81)." Skrabalak v. Rock (N.Y. A.D. 1994),208 A.D.2d 1100, 1102.
 {¶ 39} In this case, there was no change in the nature of the business activities pertinent to the guaranty agreements. As GMAC points out, "Midway, for all relevant time periods, operated as a car dealership and received wholesale floor plan financing from GMAC under the Wholesale Security Agreement and assigned leases and leased vehicles to GMAC under the GMAC Lease Plan Dealer Agreement." Simply because wrongful conduct occurred in the course of Midway's business does *Page 18 
not change the form of the entity. The Mercures offer no authority to support their claim that the wrongful conduct that occurred in the course of Midway's business constitutes a substantial change in the nature of their guaranties.
 {¶ 40} The Mercures' third assignment of error is overruled.
 {¶ 41} The Mercures' fourth assignment of error provides the following:
 {¶ 42} "IV. The trial court erred in its determination that appellee established all the elements of a prima facie claim of contractual guaranty/indemnification and therefore summary judgment was improperly granted."
 {¶ 43} Under this assignment of error, the Mercures argue that GMAC did not establish that it was actually liable in any of the underlying cases it settled, that the Mercures did not receive any notice of GMAC's unilateral settlement activities, and that Midway's wrongful acts broke the chain of causation. These issues were not raised in the lower court. It is well settled that issues not raised below cannot be raised for the first time on appeal. Mulhausen v. Ohio, Cuyahoga App. No. 88776,2007-Ohio-3917.
 {¶ 44} Insofar as the Mercures claim in their reply brief that GMAC cannot escape their burden of proving a prima facie claim, this argument is simply without merit. Much of the Mercures' argument relies upon case law pertaining to indemnification agreements. However, the agreements at issue in this case are guaranty agreements.
 {¶ 45} "The courts of New York recognize an unconditional guaranty. 1 An *Page 19 
absolute guaranty is a contract by which the guarantor promises that if the debtor does not perform his obligation or obligations, the guarantor will perform some act, such as the payment of money, to or for the benefit of the creditor. 2 A guaranty is absolute where it binds the surety severally as well as jointly with the principal and sets forth no condition precedent requiring the creditor to pursue his or her remedies against the principal before suing the surety." 63 NY Jur. Guaranty and Suretyship § 80 (2007).
 {¶ 46} Pursuant to New York law, "where, as here, a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee."Kensington House Co. v. Oram (N.Y. A.D. 2002), 293 A.D.2d 304, 304-305. These conditions of recovery were satisfied by GMAC in this case.
 {¶ 47} The Mercures' fourth assignment of error is overruled.
 {¶ 48} The Mercures' fifth assignment of error provides as follows:
 {¶ 49} "V. The trial court erred in its determination of damages because appellee contractually limited itself to recovery of no more than $250 for each of the 90 alleged instances of odometer tampering."
 {¶ 50} In this case, GMAC sought to recover damages arising out of Midway's breach of the GMAC Lease Plan Dealer Agreement. In the event of a breach, the GMAC Lease Plan Dealer Agreement expressly provides that "Dealer shall pay *Page 20 
GMAC all losses and expenses incurred by GMAC because of such breach." Despite the clear language of this provision, the Mercures argue that another provision pertaining to dealer-prepared vehicle condition reports should have been applied to the determination of damages in this matter.
 {¶ 51} Section V of the GMAC Lease Plan Dealer Agreement pertains to vehicle condition reports prepared upon the return of vehicles and states that "if the Dealer-prepared vehicle condition report does not disclose excessive wear and use or excess mileage that a reasonable inspection would have discovered, Dealer shall be responsible for the first $250 of such excessive wear and use or excess mileage." The problem with the Mercures' argument is that the vehicle condition reports are not at issue in this case. It is the "safe storage" requirement that GMAC claimed was breached, and the damages under that provision included "all losses and expenses incurred by GMAC because of such breach." We find no error in the trial court's determination of damages.
 {¶ 52} The Mercures' fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 *Page 21 
of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., and MARY J. BOYLE, J., CONCUR
[1] Michael James Mercure and Carol Mercure executed the first guaranty agreement on January 17, 1991. Their son, Michael Joseph Mercure, executed a separate guaranty agreement on September 30, 1993. The guaranty agreements are identical in substance.
[2] Midway filed for bankruptcy.
[3] We note that the trial court's journal entry reflects the amount as $1,055,397.50. However, the entry refers to plaintiff's exhibit 81, which reflects the amount as $1,050,397.50. Apparently, there was a clerical error in the journal entry; however, it does not impact the total damage award.
[4] Moreover, whether odometer tampering is encompassed by the provision requiring "safe storage" was not challenged in this matter, and therefore, it is not an issue that is before this court.
[5] That statute specifically states that a violation constitutes a felony offense. R.C. 4549.46(D). However, there is no evidence in this case that criminal charges were ever brought against GMAC. *Page 1