OPINION
{¶ 1} Appellants, Judith Norman ("Mrs. Norman") and her husband, Dana Norman ("Mr. Norman"), appeal from a judgment of the Portage County Court of Common Pleas, granting summary judgment to appellee, Nationwide Agribusiness Insurance Company ("Nationwide"). For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Mrs. Norman was a clerical employee employed by the Portage County Board of Mental Retardation and Developmental Disability ("the Board"). Mrs. Norman's employment was governed contractually by an agreement ("the employment agreement") between the Board and the Portage County Educators Association for the Mentally Retarded. The employment agreement provided temporal lunch breaks for clerical employees and expressly stated that these breaks were part of the "workday."
 {¶ 3} Nationwide insured the Board through a business auto policy, number CA 00005737. The "Portage County Board of MRDD" was listed as the named insured, and the policy was effective at the time of the accident. According to the policy, Nationwide "will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance, or use of a `covered auto.'"
 {¶ 4} The business auto coverage form defined an insured as:
 {¶ 5} "a. You for any covered `auto.'
 {¶ 6} "b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
 {¶ 7} "* * *
 {¶ 8} "(2) Your employee' if the covered `auto' is owned by that `employee' or a member of his or her household."
 {¶ 9} The policy is clear that, with reference to auto medical payments, covered autos included "owned autos only." Owned autos included "[o]nly those `autos' you own * * *." According to the policy, any automobile was a covered auto for purposes of liability coverage.
 {¶ 10} An endorsement modified this form. According to the endorsement, "any employee of yours is an `insured' while using within the scope of his or her employment a covered `auto' which is owned by that employee or a member of his household."
 {¶ 11} The policy provided uninsured/underinsured motorist coverage ("UM/UIM") with limits equal to the limits for automobile liability coverage in the policy. For purposes of UM/UIM coverage, covered autos included "owned autos only."
 {¶ 12} The parties do not dispute that, during her lunch break on February 2, 2000, Mrs. Norman drove to a Giant Eagle grocery store in Portage County, Ohio, to run a personal errand. While she was a pedestrian walking through the parking lot, she was struck by a car driven by Kenneth H. Keeler ("Keeler"), now deceased. The record does not affirmatively indicate who owned the auto that Mrs. Norman drove to the grocery store.
 {¶ 13} Appellants filed suit against Keeler on January 11, 2001. Appellants alleged that, as a direct and proximate result of the accident, Mrs. Norman suffered serious physical injuries causing her to incur substantial damages for treatment, medical care, and lost wages. The complaint also alleged that Mr. Norman "has lost, and will continue to lose, the care, society, companionship, affection, comfort, guidance, and consortium" of his wife. The complaint requested damages in excess of $25,000 and demanded a jury trial.
 {¶ 14} On January 30, 2001, Keeler timely answered, putting forth various affirmative defenses. However, on February 7, 2001, counsel for Keeler filed a suggestion of death, informing the trial court that Keeler had died on November 8, 2000. Counsel noted that he "acquired actual knowledge of said death within the last (14) days prior to the service of the Suggestion of Death." As a result of Keeler's death, appellants moved to substitute the Estate of Keeler ("the estate") as the proper defendant in the matter. Although it does not appear in the record, it appears as if appellants' motion was granted.
 {¶ 15} The complaint was re-filed against the Estate of Keeler, and the estate timely answered, putting forth various affirmative defenses.
 {¶ 16} Appellants filed an amended complaint on April 25, 2002. In this amended complaint, appellants added Nationwide as a defendant, alleging an underinsured motorist claim pursuant to the business auto policy issued by Nationwide to the Board. All defendants timely answered, and Nationwide counterclaimed for a declaratory judgment to establish that appellants were not entitled to UM/UIM motorist coverage under the applicable policy.
 {¶ 17} Appellants moved for partial summary judgment against Nationwide on February 3, 2003. Nationwide replied. Nationwide then moved for summary judgment on March 17, 2003, and appellants responded.
 {¶ 18} The trial court issued a judgment entry on March 26, 2003, denying appellants' motion for partial summary judgment and granting summary judgment in favor of Nationwide. According to the trial court, "[a]s a matter of law, it is not necessary for MRDD to provide UM/UIM coverage to its off-duty employees. Judith was not in the scope and course of her employment with MRDD when she was struck by a vehicle driven by Kenneth H. Keeler, now deceased, in the parking lot of the Kent Giant Eagle grocery store while running a personal errand. * * * This court concludes that Scott-Pontzer and its progeny are inapplicable to insurance policies issued to political subdivisions. An insurance policy is a contract and like any other contract, it should be construed in conformity with the intention of the parties. Because MRDD is not statutorily authorized to purchase UM/UIM coverage for off-duty employees, it could not have intended to purchase such coverage and Nationwide could not have intended to sell MRDD such coverage."
 {¶ 19} On April 23, 2003, appellants and the estate served notice upon the trial court that their claims had been settled. Therefore, appellants dismissed their claims against the estate, with prejudice, in accord with Civ.R. 41(A)(1). Accordingly, this April 23, 2003 order made the trial court's March 26, 2003 denial of appellants' motion for summary judgment a final appealable order.[1]
 {¶ 20} From that judgment, appellants timely appealed and set forth the following assignments of error:[2]
 {¶ 21} "[1.] The trial court erred to the prejudice of plaintiffs-appellants in ruling that, as a matter of law, Judith Norman was acting outside the course and scope of employment with the Portage County Board of MRDD at the time she was struck by a vehicle driven by Kenneth H. Keeler.
 {¶ 22} "[2.] The trial acourt [sic] erred to the prejudice of plaintiffs-appellants in ruling that the Portage County MRDD is not statutorily authorized to purchase uninsured/underinsured motorist coverage for employees acting within the course and scope of employment."
 {¶ 23} "[3.] The trial court erred to the prejudice of plaintiffs-appellants in ruling that the Portage County MRDD did not intend to purchase uninsured/underinsured motorist coverage for its employees."
 {¶ 24} Appellants provided notice of reliance on supplemental authority on October 12, 2004, bringing this court's attention toLeMasters v. The Kemper Ins. Co., 158 Ohio App.3d 277, 2004-Ohio-4282.
 {¶ 25} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12; Bostic v. Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 26} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner,67 Ohio St.3d 337, 340, 1993-Ohio-176, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 27} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 28} For the sake of clarity, we will address appellants' three assignments of error in a consolidated fashion. Appellants argue that the trial court erred by denying their motion for partial summary judgment and granting summary judgment to Nationwide. Specifically, appellants argue that Mrs. Norman was in the course and scope of employment at the time of the accident or, at best, a genuine issue of material fact existed as to whether she was in the scope of employment. Appellants further argue that the Board was statutorily authorized to purchase UM/UIM coverage for employees acting within the course and scope of employment and that the Board did intend to purchase such coverage for its employees.
 {¶ 29} We review the interpretation of contracts de novo. NationwideMut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 108,1995-Ohio-214. We must give the language of an insurance policy its plain and ordinary meaning. Dairyland Ins. Co. v. Finch (1987),32 Ohio St.3d 360, 362. When deciding whether a claimant is an insured under a policy and the contract is ambiguous and reasonably susceptible to more than one interpretation, we must liberally construe the language in favor of the policyholder, not the claimant. Galatis at ¶ 35. However, this rule cannot be employed to create ambiguity where there is none; a policy must be resolved in favor of the insured only when a provision in a policy is ambiguous and susceptible to more than one reasonable interpretation. Hacker v. State Auto Ins. Co.,75 Ohio St.3d 118, 119, 1996-Ohio-98.
 {¶ 30} Further, the law in Ohio regarding the "scope of employment" was succinctly set forth in Posin v. A.B.C. Motor Court Hotel, Inc.
(1976) 45 Ohio St.2d 271, 278-279, and needs no embellishment:
 {¶ 31} "The term `scope of employment' has never been accurately defined and this court has stated that it cannot be defined because it is a question of fact * * *. It has also been stated that an act of an agent is the act of the principal within the course of the employment when the act can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered, or a natural, direct, and logical result of it. Tarlecka v. Morgan (1932),125 Ohio St. 319.
 {¶ 32} "A servant who departs from his employment to engage in affairs of his own relieves the master from liabilities for his acts. Railway v.Shields (1890), 47 Ohio St. 387; White Oak Coal Co. v. Rivoux (1913),88 Ohio St. 18.
 {¶ 33} "* * *
 {¶ 34} "To sever the servant from the scope of his employment, the act complained of must be such a divergence from his regular duties that its very character severs the relationship of master and servant. Amstutz v.Prudential Ins. Co. (1940), 136 Ohio St. 404." (Parallel citations omitted.)
 {¶ 35} "Initially, it must be pointed out that whether the act of an employee is within the scope of his employment is a question of fact. As such, it is properly left within the province of the trier of fact. SeeWiebold Studio, Inc. v. Old World Restorations, Inc. (1985),19 Ohio App.3d 246, 251 * * *. Thus, a finding on this issue may not be reversed by a reviewing court if there is some competent, credible evidence to support such a finding. * * *" State ex rel. Celebrezze v.Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147, 158. (Emphasis sic.)
 {¶ 36} Turning to the instant matter, we note that this matter is clearly distinguishable from LeMasters. In LeMasters, the plaintiff was injured while operating her own vehicle during her lunch break from work. Id. As this court noted, "[t]he record does not affirmatively establish whether she was acting in the course and scope of her employment at the time of the accident." LeMasters at ¶ 4. The plaintiff filed suit against the alleged tortfeasor, and the parties settled their claims. The plaintiff then sought a declaratory judgment action that she was entitled to UM/UIM coverage under a policy issued to her employer. InLeMasters, we held that a genuine issue of material fact existed as to whether the plaintiff was acting within the scope of employment at the time of the accident. Id.
 {¶ 37} Unlike in LeMasters, the parties to this matter do not dispute that, during her lunch break, Mrs. Norman traveled to a Giant Eagle grocery store to run a personal errand. While running this errand, Mrs. Norman was not acting as an agent on behalf of her employer or in any way conferring any benefit to her employer. As such, the errand cannot fairly and reasonably be deemed to be an ordinary and natural incident of her employment. Tarlecka. The fact that Mrs. Norman's employment agreement indicated that lunch breaks were part of the "workday" is not determinative of whether she was within the course and scope of employment at that time. That clause in the employment agreement merely means that Mrs. Norman was getting paid for her lunch breaks. Following this logic, there existed no genuine issue of material fact that Mrs. Norman was not acting within the course and scope of employment at the time of the accident.
 {¶ 38} We now turn to our analysis of the relevant insurance policy. Interpreting the definition of an insured, as outlined by the business auto coverage form, it is apparent that a member of the Board is insured for any covered auto, and anyone else is insured while using, with the Board's permission, a covered auto owned by the Board. However, the business auto coverage form indicates that an employee is only insured if the covered auto is owned by the employee or a member of the employee's household.
 {¶ 39} An endorsement modified the business auto coverage form's definition of an insured. Pursuant to this endorsement, any employee of the Board is only an insured while using a covered auto, owned by the employee of a member of his or her household, and while acting within thescope of his or her employment.
 {¶ 40} As we concluded, there existed no genuine issue of material fact that Mrs. Norman was not acting within the course and scope of her employment at the time of the accident. This conclusion alone excludes Mrs. Norman from the definition of "insured" as outlined by the business auto coverage form and related endorsement. Therefore, we need not address whether she was using a covered auto at the time she was walking through a parking lot at Giant Eagle.
 {¶ 41} Because Mrs. Norman was not an insured at the time of the accident, appellants were not entitled to any UM/UIM coverage that was available through the policy issued to the Board. Pursuant to this analysis, we need not decide whether the Board was statutorily authorized to purchase UM/UIM coverage for employees acting within the scope of employment.
 {¶ 42} In summary, the trial court correctly denied appellants' motion for partial summary judgment and properly granted Nationwide's motion for summary judgment. Appellants' three assignments of error are without merit. We hereby affirm the judgment of the Portage County Court of Common Pleas.
Ford, P.J., Rice, J., concur.
[1] Pursuant to Denham v. New Carlisle, 86 Ohio St.3d 594, 1999-Ohio-128, the grant of summary judgment to only one of multiple defendants becomes a final appealable order when the plaintiff voluntarily dismisses the remaining defendants. Therefore, this matter is properly before this court.
[2] On July 18, 2003, this court issued a judgment in which we granted a stay of the proceedings in this appeal until the Supreme Court of Ohio had rendered its decisions in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849 and Allen v. Johnson,100 Ohio St.3d 276, 2003-Ohio-5889. As the decisions had been released, we dissolved the stay on February 20, 2004 and ordered this matter to proceed.