OPINION
{¶ 1} In the present appeal, submitted on the record and briefs of the parties, plaintiff-appellant, Susan Skolnick, appeals from the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Cincinnati Insurance Company ("Cincinnati"). We affirm, in part, reverse, in part, and remand the trial court's judgment for proceedings consistent with this opinion.
 {¶ 2} On December 19, 1993, Skolnick was a passenger in a vehicle being driven by Douglas Pilney, which was involved in a single vehicle accident while traveling eastbound on State Route 82, in Vienna Township, Trumbull County, Ohio. The vehicle, which was traveling at a high rate of speed, left the roadway and overturned. Pilney was killed as a result of the accident. Skolnick, who was ejected from the vehicle when it overturned, was rendered a paraplegic as the result of injuries she sustained from the accident.
 {¶ 3} Pilney's insurer, Erie Insurance, paid Skolnick $100,000 for her injuries, the policy limit. Skolnick additionally filed and received an underinsured motorist claim payment in the amount of $500,000 from Meridian Mutual Insurance Company, and a $5,000 medical payment, also from Meridian.
 {¶ 4} At the time of the accident, appellant lived with her parents, Jay and Gael Skolnick. Jay Skolnick was a partner with the law firm of Nadler, Nadler and Burdman Co, L.P.A. ("Nadler"). In 1991, Nadler had entered into a commercial umbrella liability policy, number CCC 257 50 72 with itself as the named insured. The policy period for the umbrella liability policy ran from January 12, 1991 to January 12, 1994.
 {¶ 5} Attached to the commercial umbrella policy were six personal umbrella liability endorsements and six excess uninsured motorist coverage endorsements, with coverage limits of $2,000,000, in the names of six of the partners of the firm. Jay Skolnick was not included in the commercial umbrella policy as a named insured; however, a personal umbrella liability endorsement was added to the policy in his name, via a "general change endorsement," on December 1, 1992. The coverage period for Jay Skolnick's personal umbrella liability policy was to end at the same time the other policies elapsed, on January 12, 1994.
 {¶ 6} Jay Skolnick's personal umbrella endorsement contained an automobile liability provision, with coverage limits of $250,000 per person for bodily injury and $100,000 each occurrence for property damage. Unlike the other partners in the firm who elected to add an "excess uninsured motorist coverage endorsement" to their respective personal umbrella liability policies, Jay Skolnick's policy had an "application for excess uninsured motorist coverage" attached, indicating his intent to reject the excess uninsured motorist coverage under the policy. This form was signed by Skolnick on February 16, 1993.
 {¶ 7} On January 24, 2003, Skolnick filed a complaint in the Trumbull County Court of Common Pleas, seeking declaratory judgment that she was an insured under Nadler's commercial umbrella policy and her father's personal umbrella liability policy, which arose from the commercial umbrella policy.[1]
 {¶ 8} On October 13, 2004, Cincinnati filed a motion for summary judgment. On November 12, 2004, Skolnick filed a memorandum in opposition to Cincinnati's motion. On the same day, the trial court granted summary judgment in favor of appellee. Skolnick timely appeals, raising a single assignment of error for our review:
 {¶ 9} "The trial court erred to the prejudice of Plaintiff by granting Defendant Cincinnati Insurance Company's Motion for Summary Judgment."
 {¶ 10} An appellate court examines the trial court's decision to grant or deny a motion for summary judgment under a de novo standard of review. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is proper when three conditions are satisfied: 1) there is no genuine issue of material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64,66. In reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186.
 {¶ 11} Under Civ.R. 56(C), "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." Drescher v. Burt, 75 Ohio St.3d 280, 292, 1996-Ohio-107 (citation omitted). Facts that are material are those relevant to the substantive law applicable in a particular case. Needham v. Provident Bank (1996), 110 Ohio App.3d 817,827, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied."Dresher, 75 Ohio St.3d at 293.
 {¶ 12} Skolnick maintains, and Cincinnati concedes, that former R.C. 3937.18, effective January 5, 1988, is controlling over the contract. We agree. See Ross v. Farmers Ins. Group ofCos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus ("For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties.");Smith v. Cincinnati Ins. Co., 11th Dist. No. 2001-L-114, 2002-Ohio-7343, at ¶ 10; Leasure v. Perry, 11th Dist. No. 2001-P-0153, 2003-Ohio-2103, at ¶ 13; Burton v. Allstate Ins.Co., 12th Dist. No. CA2004-10-247, 2005-Ohio-5291, at ¶ 13. It is likewise undisputed that the accident in which Skolnick was injured occurred while the original policy was in effect.
 {¶ 13} Former R.C. 3937.18, in effect at the time both the commercial umbrella liability policy and the personal umbrella liability endorsement were executed, states: "[n]o automobile liability or motor vehicle liability policy of insurance insuring against loss * * * for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless * * * the following are provided:
 {¶ 14} "(1) * * *
 {¶ 15} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury * * *, where the limits of coverage available for payment to the insured * * * are less than the limits for the insured's uninsured motorist coverage at the time of the accident * * *."
 {¶ 16} Prior to September 3, 1997, the Ohio General Assembly did not define the term "automobile/motor vehicle liability insurance" as contained in R.C. 3937.18(A). Smith,
2002-Ohio-7343, at ¶ 10. However, the Ohio Supreme Court, and appellate courts within the state interpreted the term to include umbrella endorsements, when they included automobile coverage. See Selander v. Erie Ins. Group, 85 Ohio St.3d 541, 545, 1999-Ohio-287 ("[t]he type of policy is determined by the type of coverage provided, not the label affixed by the insurer") (citation omitted); Duriak v. Globe Am. Cas. Co. (1986),28 Ohio St.3d 70, 72, overruled, in part, on other grounds byMiller v. Progressive Cas. Ins. Co., 69 Ohio St.3d 619,1994-Ohio-160; Cincinnati Ins. Co. v. Siemens (1984),16 Ohio App.3d 129, 132; House v. State Auto Mut. Ins. Co. (1988),44 Ohio App.3d 12, at paragraph one of the syllabus ("A commercial umbrella liability policy constitutes automobile liability insurance within the contemplation of R.C. 3937.18 and thus affords uninsured motorist coverage to an insured under the policy"); Nationwide Mut. Ins. Co. v. Chivington (1991),72 Ohio App.3d 700, 706.[2]
 {¶ 17} In reviewing the declarations pages of both the commercial umbrella liability policy and the personal umbrella liability endorsement naming Jay Skolnick as the insured, both explicitly provide for automobile coverage. As such, they are considered automobile liability policies under former R.C.3937.18, and UM/UIM coverage may be excluded from an automobile liability insurance policy only by means of a "meaningful" written offer and rejection of that offer by the named insured.Linko v. Indem. Ins. Co. of N. Am., 90 Ohio St.3d 445, 449, 2000-Ohio-92, citing Gyori v. Johnston Coca-Cola Bottling Group,Inc., 76 Ohio St.3d 565, 568, 1996-Ohio-358. For the written offer to be "meaningful," and the rejection to be valid, it must contain the following three elements: (1) it must describe the coverage; (2) it must list the premium costs of the UM/UIM coverage; and, (3) it must expressly state the UM/UIM coverage limits. Id. Under the former R.C. 3937.18(C), absent the written offer and rejection of UM/UIM coverage before the time such coverage would begin results in an insured acquiring UM/UIM coverage by operation of law in the same amount as any liability coverage provided. Schumacher v. Kreiner, 88 Ohio St.3d 358,359-360, 2000-Ohio-344. The burden is on the insurer to demonstrate that there has been a timely express written offer and rejection, regardless of whether the coverage was contemplated. Schumacher, 88 Ohio St.3d at 360.
 {¶ 18} A review of the declaration page of Nadler's commercial umbrella policy reveals that the policy was to include coverage for non-owned and hired automobiles. A review of the endorsement showing Jay Skolnick as the named insured also contains an automobile liability provision. There is no indication of any written offer of UM/UIM coverage relating to Nadler's policy. With respect to the endorsement, there is an "application for excess uninsured motorist coverage" signed by Jay Skolnick, but it is deficient in two respects. First, it was signed by Jay Skolnick on February 16, 1993, over two months after the endorsement went into effect. Second, it contains none of the three Linko requirements. Accordingly, UM/UIM coverage arose by operation of law.
 {¶ 19} Nevertheless, Cincinnati maintains that the Ohio Supreme Court's holding in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, controls and precludes recovery on Skolnick's claims. We agree with Cincinnati's argument to the extent that Galatis applies to Nadler's commercial umbrella policy, but disagree with Cincinnati and agree with Skolnick, with respect to Jay Skolnick's personal liability umbrella endorsement, finding Galatis is distinguishable.
 {¶ 20} Galatis severely limited the holding of ScottPontzer v. Liberty Mut. Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292, in two respects: First, Galatis held that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within thecourse and scope of employment." 2003-Ohio-5849, at paragraph two of the syllabus (emphasis added). Galatis further held that "[w]here a policy of insurance designates a corporation as anamed insured, the designation of `family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless thatemployee is also a named insured." (emphasis added); Becki v.Fresh Mark, Inc., 160 Ohio App.3d 109, 2005-Ohio-1356, at ¶ 7.
 {¶ 21} In Scott-Pontzer, the dispositive issue the Ohio Supreme Court sought to determine was whether an employee was covered under a corporate employer's liability policy, where the sole named insured was the corporation. The holding inScott-Pontzer turned solely on the ambiguity of the term "you," meaning the insured, as used in the policy.
 {¶ 22} The Supreme Court held that since a corporation could only act by and through its employees, an employee had UM/UIM coverage under former R.C. 3937.18 when the corporation was the named insured under the policy. Cincinnati maintains that Skolnick is proceeding under a Scott-Pontzer theory of liability and, therefore, she is precluded from recovery since she is neither a covered employee acting in the scope of employment, or a named insured, as required by Galatis. We disagree.
 {¶ 23} As stated earlier, the documents in question consist of the commercial umbrella policy issued to Nadler, and the personal umbrella liability endorsement, added to the corporate policy, with Jay Skolnick as the named insured. With respect to the commercial policy, Nadler is undoubtedly a corporate insured under the holding of Galatis. It is well-settled that in Ohio, a professional association organized under R.C. Chapter 1785 is regarded as a corporation. Lenhart v. Toledo Urology Assocs.,Inc. (1975), 48 Ohio App.2d 249, 250, citing O'Neill v. UnitedStates (N.D.Ohio 1968), 281 F.Supp. 359, 361. This rule extends to legal professional associations. State ex rel. Wise, Childs Rice Co., L.P.A. v. Basinger (1988), 54 Ohio App.3d 107, 108. Since Nadler is the named insured by the express terms of the commercial umbrella liability policy, Galatis applies and Skolnick is precluded from recovering under Nadler's commercial umbrella policy. We affirm as to the trial court's grant of summary judgment in favor of Cincinnati with respect to this policy.
 {¶ 24} However, our inquiry does not end here, since the first line of the personal umbrella liability endorsement reads as follows: "Other than the cancellation condition, it is agreed that the terms, conditions, provisions, agreements or limitations of the policy to which this endorsement is attachedshall not apply to this endorsement." (Emphasis added). The first line of the definitions section further states: "In this endorsement the words you, your or yours mean the person named in the declarations, and his or her spouse who lives in the same household." It is well-established in Ohio law that when the language of an insurance contract is clear and unambiguous, a court must enforce the contract as written and give the words their plain and ordinary meaning. Cincinnati Indem. Co. v.Martin, 85 Ohio St.3d 604, 607, 1999-Ohio-322 (citation omitted).
 {¶ 25} Thus, according to the terms of the personal umbrella liability endorsement, there is no ambiguity whatsoever. Pursuant to the declaration page, Jay Skolnick is the sole named insured under the endorsement. Taken together with the aforementioned prefatory clause, it is clear that the endorsement is intended to operate as a separate policy of insurance from the commercial umbrella policy. This conclusion is borne out by an examination of each of the personal liability endorsements of the other partners of the firm which all reflect various options with respect to the types and levels of coverage elected by each partner. Under the plain language of the contract, there is no ambiguity as to what the word "you" means, like there was inScott-Pontzer. See Am. Mfrs. Mut. Ins. Co. v. Kurtz, 7th Dist. No. 04 MA 53, 2005-Ohio-6452, at ¶ 24, ("[n]othing in R.C. § 3937.18 prohibits parties from establishing a definition as to who is and who is not an `insured' under an insurance policy") (citation omitted).
 {¶ 26} Furthermore, Part II, Section 2, of the endorsement provides that Cincinnati will "cover all relatives for any occurrences involving an automobile they own, lease, rent or use. But if you borrow or use an automobile, you are covered only if you drive, or use it with permission." Relative is defined by the endorsement as one related to person named in the declaration to the endorsement by blood, marriage, or adoption "who lives inthe named person's home." (Emphasis added). Since it is undisputed that Skolnick satisfied these conditions at the time the contract of insurance was executed, she is clearly among the class of individuals contemplated as covered under the personal umbrella liability endorsement. See Moore v. State Auto. Mut.Ins. Co., 88 Ohio St.3d 27, 31, 2000-Ohio-264. (the purpose of UM/UIM coverage is to protect people from losses which would otherwise go uncompensated due to the tortfeasor's lack of liability insurance).
 {¶ 27} Viewing this evidence in the light most favorable to Skolnick, we conclude that under the circumstances of this case, she is entitled to UM/UIM coverage by operation of law, andScott-Pontzer, as subsequently limited by Galatis, does not apply to the personal liability endorsement. The trial court's grant of summary judgment in favor of Cincinnati on the endorsement was improper.
 {¶ 28} We note that our decision to reverse on this basis does not guarantee an ultimate judgment in favor of appellant, since there remains a genuine issue of material fact relating to Skolnick's compliance with the notice provisions contained in the contract. See Erdmann v. Kobacher Co., 6th Dist. No. L-02-1184,2003-Ohio-5677, at ¶ 22.
 {¶ 29} For the previously stated reasons, we affirm in part, reverse in part, and remand to the Trumbull County Court of Common Pleas for proceedings consistent with this opinion.
Ford, P.J., O'Neill, J. concur.
[1] Skolnick also named Travelers Insurance Company ("Travelers"), as a defendant to the suit. In her complaint against Travelers, which carried her father's personal automobile and homeowner's insurance policies, Skolnick alleged that the homeowner's policy was a "motor vehicle insurance policy," and therefore, UM/UIM coverage arose by operation of law. Skolnick also claimed that she was covered under a UM/UIM provision contained in her father's automobile insurance policy. On October 17, 2003, Skolnick voluntarily dismissed her claim against Travelers with respect to the homeowner's policy pursuant to Civ.R. 41(A). On February 7, 2005, appellant settled and dismissed her claim against Travelers based upon the automobile policy. Thus, Skolnick's claim against Cincinnati is the only one remaining. See Norman v. Keeler, 11th Dist. No. 2003-P-0052,2005-Ohio-1899, at ¶ 19 n. 1 (the grant of summary judgment to one of multiple defendants becomes a final appealable order once the plaintiff voluntarily dismisses the remaining defendants.) (citation omitted).
[2] We note, as an aside, that the foregoing analysis comports with the subsequent amendment to R.C. 3937.18 in H.B. 261, effective September 3, 1997, which was rewritten to include section (L), which expressly defined "automobile liability or motor vehicle liability policy of insurance" to include "any umbrella policy of insurance." Former R.C. 3937.18(L)(2).