OPINION
{¶ 1} Appellant/cross-appellee, Susan Skolnick, appeals the judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of appellee/cross-appellant, Cincinnati Insurance Companies ("Cincinnati"), on the issue of coverage limits under the umbrella liability policy issued by Cincinnati to Susan's father, Jay Skolnick. We reverse the judgment of the lower court.
 {¶ 2} In December of 1993, Susan was a passenger in a vehicle, driven by Douglas Pilney, which was involved in a single vehicle accident. The accident killed Pilney and left Susan a paraplegic as the result of injuries she sustained.
 {¶ 3} Pilney's insurance company, Erie Insurance, paid Susan $100,000. Susan filed an underinsured motorist claim against Meridian Mutual Insurance Company, and received payment in the amount of $500,000. Meridian also paid a $5,000 medical claim. Susan also filed UM/UIM claims against Traveler's Insurance Company, the carrier of Jay Skolnick's personal automobile and homeowner's insurance policies. Susan's claims against Traveler's were settled and/or otherwise dismissed.
 {¶ 4} At the time the accident occurred, Susan lived with her parents, Jay and Gael Skolnick. Jay Skolnick was a partner at the firm of Nadler, Nadler, and Burdman Co., L.P.A. ("Nadler").
 {¶ 5} In 1991, Nadler had entered into a commercial umbrella liability policy with Cincinnati, with itself as the named insured. Attached to this policy were six personal umbrella endorsements and six excess uninsured motorist coverage endorsements, with coverage limits of $2,000,000, in the names of six of the firm's partners. Jay Skolnick was not included as a named insured in the commercial umbrella policy. *Page 3 
However, a personal umbrella liability endorsement was added to the Nadler policy in his name, by means of a "general change endorsement," on December 1, 1992, with the coverage period extending until January 12, 1994, the date the other policies were to elapse.
 {¶ 6} Although the other partners in the Nadler firm elected to add an "excess uninsured motorist coverage endorsement" to their respective personal umbrella policies, Jay Skolnick signed an "application of excess uninsured motorist coverage," which indicated his intent to reject this coverage under his policy. However, the aforementioned application was not executed until February 16, 1993.
 {¶ 7} On January 24, 2003, Susan filed a declaratory judgment claim against Cincinnati seeking a declaration she was entitled to underinsured motorist coverage under the policies issued to Nadler and Jay Skolnick. Cincinnati subsequently filed for summary judgment, which was granted in its favor by the trial court. Susan subsequently appealed this decision to our court. See Skolnick v. Cincinnati InsuranceCos., 11th Dist. No. 2005-T-0022, 2006-Ohio-1461, at ¶¶ 2-8("Skolnick 1").
 {¶ 8} On March 24, 2006, we entered judgment affirming the trial court's grant of summary judgment, in part. In this judgment, we held that "[Susan] is precluded from recovering under Nadler's commercialumbrella liability policy"since "Nadler is undoubtedly a corporate insured under * * * [Westfield Ins. Co.] v. Galatis[, 100 Ohio St.3d 216,2003-Ohio-5849]." Id. at ¶ 23 (emphasis added).
 {¶ 9} However, we also reversed the trial court's grant of summary judgment, in part,_holding that UM/UIM coverage under Jay Skolnick'spersonal liability endorsement, "arose by operation of law," under the version of R.C. 3937.18 in effect at the time of the *Page 4 
accident, since his rejection of the excess uninsured motorist coverage "was signed * * * over two months after the endorsement went into effect," and failed to comport with any of the requirements for a "`meaningful' written offer and rejection of that offer," as outlined in Linko v.Indem. Ins. of N. Am., 90 Ohio St. 445, 449, 2000-Ohio-92. Id. at ¶¶ 17-18.
 {¶ 10} We next examined the terms of Jay Skolnick's personal liability endorsement, and concluded that Susan was "among the class of individuals contemplated as covered under the personal umbrella liability endorsement." Id. at ¶ 26.
 {¶ 11} Accordingly, we reversed that portion of the trial court's judgment, holding that the "grant of summary judgment in favor of Cincinnati on the [personal umbrella] endorsement was improper." The matter was remanded to the trial court on this basis, and for a determination of whether Susan had complied "with the notice provisions contained in the contract." Skolnick, 2006-Ohio-1461, at ¶¶ 27-29.
 {¶ 12} On remand, the parties conducted further discovery on the issue of whether Susan complied with the notice provisions. On January 22, 2007, after receiving leave to file, Cincinnati filed a second motion for summary judgment, arguing that it was entitled to summary judgment because Susan had failed to comply with the notice provisions contained in the contract. Cincinnati also argued that even if Susan was found to have complied with the notice provisions, she was not entitled to coverage, since she had received in excess of the contractual limits of available coverage, and failed to protect Cincinnati's subrogation rights, as required by the contract. *Page 5 
 {¶ 13} On July 13, 2007, after obtaining further discovery and receiving leave to file, Susan filed her reply to Cincinnati's motion for summary judgment and filed her own motion for summary judgment on the issue of her compliance with the notice provisions. In her motion, Susan further argued that the contractual coverage limit was not $250,000 as alleged by Cincinnati, but rather $2,000,000, the umbrella policy limit. On July 19, 2007, Cincinnati filed its reply to Susan's motion for summary judgment.
 {¶ 14} On July 24, 2007, the trial court ruled on the parties' respective motions for summary judgment. In its judgment, the trial court granted summary judgment in favor of Susan on the issue of notice, finding that she "did not breach the notice provision of the policy in question."
 {¶ 15} However, the trial court ruled in favor of Cincinnati on the issue of coverage limits, finding that "although coverage is provided * * * under this policy, * * * the proper limit of coverage is $250,000, and not the $2,000,000 limit under the commercial umbrella issued to the Nadler law firm, as plaintiff argues."
 {¶ 16} In so doing, the trial court relied on language in this court's earlier opinion, which stated that "it is clear that the endorsement is intended to operate as a separate policy of insurance from the commercial umbrella policy."
 {¶ 17} On this basis, the lower court found "that summary judgment on the issue of the amount of coverage in favor of * * * Cincinnati Insurance Co. is appropriate in the amount of a $250,000 limit of coverage under the terms of the personal umbrella liability endorsement," and thus, "the coverage limit [in the policy] has been exhausted * * * due to Cincinnati's assignment rights and * * * statutory [right to] setoff." *Page 6 
 {¶ 18} On August 20, 2007, Susan filed a timely appeal to the trial court's judgment, assigning the following as error for our review:
 {¶ 19} "The trial court erred to the prejudice of [p]laintiff by granting [d]efendant Cincinnati Insurance Company's Motion for Summary Judgment as to the amount of insurance coverage."
 {¶ 20} "The standard applied by an appellate court in reviewing a lower court's decision to grant summary judgment is * * * de novo, as it only involves questions of law." Masek v. Marroulis, 11th Dist. No. 2007-T-0034, 2007-Ohio-6159, at ¶ 27 (citations omitted). "Summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." Id.; Bischof v. Mentor Exempted Village School Dist., 11th Dist. No. 2007-L-056, 2007-Ohio-6155, at ¶ 14 (citations omitted). "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Minno v. Pro-Fab, 11th Dist. No. 2007-T-0021,2007-Ohio-6565, at ¶ 21 (citation omitted).
 {¶ 21} In the instant appeal, neither party argues the trial court's determination that Susan satisfied the notice provisions of the contract. The sole issue is the amount of UM/UIM coverage provided under the policy in question.
 {¶ 22} "It is axiomatic that the interpretation of a contract provision [is] an issue of law which is properly adjudicated through summary judgment." Novosel v. Gusto, Inc. (Dec. 3, 1998), 8th Dist. No. 73575, 1998 Ohio App. LEXIS 5794, at *9. *Page 7 
 {¶ 23} Susan argues that "the limit of coverage of a personal liability endorsement is the amount listed on the declarations page and provides excess coverage to an underlying, basic policy." As such, she asserts that the trial court erred in granting summary judgment in favor of Cincinnati, since the "Excess Uninsured Motorist Coverage Endorsement" signed by her father, served to "amend the personal liability endorsement * * * to the limit of coverage," of the declarations page of the personal liability endorsement. Susan argues that the trial court's holding that the available coverage was $250,000, in effect, writes "the $2,000,000 umbrella policy, which [our] court found applicable, out of existence." Cincinnati counters that the trial court properly found that the limit of coverage under the umbrella policy to be $250,000, by applying the "law of the case" doctrine based upon this court's earlier "holding" in Skolnick 1. For the reasons that follow, we agree with Susan's position.
 {¶ 24} The "law of the case" doctrine "provides that the decision of a reviewing court remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * * [T]he doctrine functions to compel trial courts to follow the mandates of reviewing courts. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. * * * Moreover, the trial court is without authority to extend or vary the mandate given." Nolan v.Nolan (1984), 11 Ohio St.3d 1, 3-4 (citations omitted); Weller v.Weller, 11th Dist. No. 2004-G-2599, 2005-Ohio-6892, at ¶ 15 (citation omitted). *Page 8 
 {¶ 25} "[A]bsent extraordinary circumstances, legaldeterminations made by this court must be followed by inferior courts in subsequent proceedings of that particular case." Weller, 2005-Ohio-6892
at ¶ 16, citing Lapping v. HM Health Servs., 11th Dist. No. 2004-T-0011,2005-Ohio-699, at ¶ 18 (emphasis added).
 {¶ 26} "The issue of whether * * * the law of the case doctrine applies * * * in a particular situation is a question of law * * * reviewed under a de novo standard." Nationwide Ins. Co. v. Davey Tree Expert Co.,166 Ohio App.3d 268, 2006-Ohio-2018, at ¶ 15.
 {¶ 27} Contrary to Cincinnati's assertions, the law of the case doctrine does not apply with regard to the coverage limit issue, since we did not reach a legal conclusion with regard to this issue. As is clear from our prior opinion, the sole issue for this court's determination was whether Cincinnati was entitled to summary judgment, under Nadler's commercial umbrella policy and Jay Skolnick's personal umbrella endorsement, because "the Ohio Supreme Court's holding inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849 * * * controlled] and precluded] recovery on Skolnick's claims."Skolnick, 2006-Ohio-1461, at ¶ 19.
 {¶ 28} In other words, the issue for this court to determine was whether Susan was contemplated as an insured under either the Nadler umbrella policy or Jay Skolnick's personal umbrella policy. Though we determined that Susan was not covered under the Nadler umbrella policy, based upon the Ohio Supreme Court's Galatis, we further held that Susan was "clearly among the class of individuals contemplated as covered under [Jay Skolnick's] personal liability endorsement." Id. at ¶ 26 (citation omitted). *Page 9 
 {¶ 29} With regard to Jay Skolnick's personal liability endorsement, our sole conclusion was that the umbrella policy "explicitly provide[d] for automobile coverage," and, as such, "UM/UIM coverage may be excluded * * * only by means of a `meaningful' written offer and rejection."[1]
Id. at ¶ 17, citing Linko, 90 Ohio St.3d at 449. We based our conclusion that UM/UIM coverage arose under Jay Skolnick's personal umbrella liability endorsement by operation of law for three reasons: First, we stated that "none of the * * * Linko requirements" were met in Cincinnati's offer of automobile insurance under Jay Skolnick's personal umbrella endorsement. Id. Second, we stated that since the rejection "was signed by Jay Skolnick * * * over two months after the endorsement went into effect," it was ineffective. Id. at ¶ 18. Third, we stated that, "according to the terms of the personal umbrella liability endorsement, * * * Jay Skolnick is the sole named insured," and, as such, "the endorsement is intended to operate as a separate policy of insurance from the commercial umbrella policy." Id. at ¶ 25. The fact that Susan satisfied the personal umbrella policy's definition of a "relative" at the time the accident occurred, led to our conclusion that she was a covered person under that policy. Id. at 26.
 {¶ 30} It is axiomatic that "[t]he interpretation of contract provisions is a question of law for the court." Gen. Motors AcceptanceCorp. v. Mercure, 8th Dist. No. 88963, 2007-Ohio-5708, ¶ 16 (citation omitted). As such, a lower court's interpretation of a *Page 10 
contract provision is "reviewed by a court de novo." Nationwide Mut.Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107, 109, 1995-Ohio-214
(citation omitted).
 {¶ 31} "An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies." Midwestern Indemn. Co. v.Craig (1995), 106 Ohio App.3d 158, 164. (citation omitted). "`[U]mbrella policies' * * * are designed to fill gaps in coverage." Am. Special RiskIns. Co. v. A-Best Prods., Inc. (N.D.Ohio 1997), 975 F.Supp. 1019, 1022.
 {¶ 32} In Skolnick 1, we also concluded "that former R.C. 3937.18, effective January 5, 1988, [was] controlling over the contract."2006-Ohio-1461, at ¶ 12 (citations omitted). Neither party disputed this conclusion. Id.
 {¶ 33} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at thetime of entering into a contract for automobile liability insurancecontrols the rights and duties of the contracting parties." Id., citingRoss v. Farmers Ins. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus (emphasis added).
 {¶ 34} Former R.C. 3937.18, in effect at the time the personal umbrella liability endorsement was executed, provides:
 {¶ 35} "[N]o automobile liability or motor vehicle liability policy of insurance insuring against loss * * * for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall beissued for delivery in this state * * * unless * * * the following * * *are provided: * * * "Underinsured motorist coverage, which shall be in anamount of coverage equivalent to the automobile liability * * * coverageand shall provide for protection against an insured against loss forbodily injury * * *, where *Page 11 
the limits of coverage available for payment to the insured * * * are less than the limits for the insured's uninsured motorist coverage at the time of the accident." R.C. 3937.18(A)(2); see also, Skolnick,2006-Ohio-1461, at ¶¶ 13-15 (emphasis added).
 {¶ 36} In holding that Susan was covered under her father's umbrella policy pursuant to R.C. 3937.18(A)(2), we noted that "[p]rior to September 3, 1997, the Ohio General Assembly did not define the term `automobile * * * liability insurance' as contained in R.C. 3937.18(A)."Skolnick, 2006-Ohio-1461, at ¶ 16 (citation omitted).
 {¶ 37} In this court's previous opinion, we found that, prior to the Legislature defining the term, "courts within the state interpreted the term to include umbrella endorsements, * * * when they included automobilecoverage." Id., citing Selander v. Erie Ins. Group, 85 Ohio St.3d 541,545, 1999-Ohio-287; Duriak v. Globe Am. Cas. Co. (1986),28 Ohio St.3d 70, 72; Cincinnati Ins. Co. v. Siemens (1984), 16 Ohio App.3d 129, 132;House v. State Auto Mut. Ins. Co. (1988), 44 Ohio App.3d 12, at paragraph one of the syllabus; Nationwide Mut. Ins. Co. v.Chivington (1991), 72 Ohio App.3d 700, 706.
 {¶ 38} We now must turn to the applicable policy provisions to determine the extent of the automobile liability coverage provided under Jay Skolnick's personal umbrella policy.
 {¶ 39} Part II, of the umbrella liability endorsement, entitled "WHO IS COVERED — INSUREDS," states: "We [Cincinnati] [will] cover allrelatives for any occurrences involving an automobile you [the insured] own, rent, borrow, lease, or use." (Emphasis added). *Page 12 
 {¶ 40} An "occurrence," for the purpose of the personal umbrella liability endorsement, is defined as an "accident, happening event or series of related events that unexpectedly or unintentionally causesPersonal Injury * * * during the endorsement period."
 {¶ 41} In Part III of Jay Skolnick's personal umbrella liability policy, entitled "WHAT WE WILL DO," the contract provides as follows:
 {¶ 42} "We will pay on behalf of anyone covered in this endorsement.
 {¶ 43} "1. Excess insurance over and above the amounts providedfor in basic policies, or
 {¶ 44} "2. Damages arising out of Personal Injury or PropertyDamage claims or legal actions anywhere in the world and caused by anoccurrence covered in this endorsement which is either excluded or notcovered under your basic policies."
(Emphasis added).
 {¶ 45} This section further stated that "[b]oth of these coverages (in 1. or 2. above) are limited to the maximum amount of coverage that isshown in item 3 of the declarations, regardless of the number of insureds against whom claim is made or suit is brought." (Emphasis added). Item 3 of the declaration page provides for a limit of coverage of $2,000,000 for each occurrence.
 {¶ 46} Under the definitions section of this endorsement, "Basicpolicy or policies" is defined as "a policy or policies listed on thedeclarations * * * which provides liability coverage for PersonalInjury or Property Damage because of an occurrence." (Emphasis added). *Page 13 
 {¶ 47} Item 6 of the declarations page contains the "Schedule of BasicPolicies," stating that "[i]t is agreed by you or your relatives that the Limit(s) of Coverage provided by the following basic policies are in force as of the inception date of this policy and will be maintained during the term of the Umbrella Liability Coverage."
 {¶ 48} The first item listed under the basic policies on the declarations page is the aforementioned Automobile Liability provision, which limited coverage for Bodily Injury to $250,000 for each person, and $500,000 for each occurrence. As is clear from this provision, the aforementioned limits of coverage apply only to the Automobile Liabilitybasic policy, as defined by the terms of Jay Skolnick's personal umbrella liability endorsement.
 {¶ 49} Further explanation of the parties' intent regarding how the personal umbrella coverage interacts with the basic automobile liability coverage is found in the Excess Uninsured Motorist Coverage Endorsements executed by those partners in the firm who did not attempt to reject such coverage. These endorsements state that the insured "warrants] and agrees[s] that the Basic Policies scheduled in the Declarations provide Uninsured and Underinsured Motorist Coverage at the identical Limit of Coverage as shown for Automobile Liability. If the Basic Policies are terminated, or the Limit of Coverage is less than listed onour Declarations page, we will only pay as though the policies had never been terminated, or the limits lessened." Using this language as a guide, the excess coverage arising under Jay Skolnick's umbrella policy by operation of law would not arise until the $250,000 coverage limit contained within his basic automobile policy was exhausted. *Page 14 
 {¶ 50} Since Jay Skolnick's personal umbrella liability endorsement, by its express terms, covered "relatives for any occurrences involving an automobile," and provided for "excess insurance over and above that provided in the basic policies," we are compelled to conclude, under the applicable law at the time the accident occurred, that the coverage limit arising by operation of law under the umbrella policy was $2,000,000, based upon the coverage limit contained in Item 3. SeeDuriak, 28 Ohio St.3d at 72 ("Clearly, under the express terms of R.C. 3937.18, no exception is made with respect to excess insurance coverage. If the legislature desires to exempt excess liability carriers, they are free to do so. In the meantime, however, we are compelled to hold that excess liability insurance must comport with R.C. 3937.18."); cf.Siemens, 16 Ohio App.3d at 132 (holding that "in issuing the umbrella endorsement" with similar coverage terms, the insurance company "issued * * * liability insurance requiring the offering of uninsured motorist coverage in accordance with R.C. 3937.18," and finding the policy limit for UM under the umbrella policy to be $1,100,000).
 {¶ 51} For these reasons, Susan's sole assignment of error has merit.
 {¶ 52} We reverse the judgment of the Trumbull County Court of Common Pleas, and remand this matter to the lower court for proceedings consistent with this opinion. Costs to be taxed against appellee.
COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur.
[1] In the prior appellate decision in this matter, this court was asked to determine whether Susan was contemplated as an insured under Jay Skolnick's personal umbrella policy. In our recitation of the procedural history in that prior decision, we mentioned that Jay Skolnick's personal umbrella endorsement "contained an automobile liability provision, with coverage limits of $250,000 per bodily injury." As is evident from the face of the endorsement, that reference pertains to the minimum coverage requirements contained in that endorsement. The minimum coverage requirements are not the same as the umbrella policy limits. *Page 1